S07A1180. LEWIS v. VAN ANDA.

(653 SE2d 708)

HUNSTEIN, Presiding Justice.

This appeal involves a dispute regarding the validity of an irrevocable inter vivos trust executed in April 2003 by Frankie Walker, now deceased. Walker's husband, appellee Joe Van Anda, filed suit in Bacon County Superior Court, seeking to set aside the trust and related transfers thereto on the grounds that they were the product of undue influence exerted by Walker's sister, appellant Mollie Lewis. Lewis was named trustee and beneficiary under the trust, which, together with Walker's will (in which Lewis was named executrix) had the effect of leaving virtually all of Walker's substantial assets to Lewis. Walker's will is the subject of pending probate proceedings in Bacon County, which apparently have been held in abeyance until resolution of the instant case.

The relevant background facts are as follows. Walker, then age 86, and Van Anda, then age 57, married in 2001, the year after Walker's first husband died. Van Anda had previously been married to Walker's great-niece and had thus known the Walkers since the mid-1980s, and apparently remained close with the couple even after his divorce. The Walkers never had children, and Mr. Walker, prior to his death, had expressed the desire that their farm in Ray City, Georgia and other assets be passed to Van Anda upon the Walkers' deaths.

Walker lived at Van Anda's home in Florida until February 2003, when Walker returned to Alma, Georgia to live with Lewis. Though Walker had had minimal contact with Lewis in the preceding two to three years, she apparently felt compelled to leave Van Anda because she suspected, based on claims by various of Walker's family members, that Van Anda was having affairs with other family members and using Walker's money to pay his personal debts. The day after Walker's arrival in Alma, she met with Lewis' attorney, Fred Kopp, who drafted her a new will, naming Lewis and another sister as beneficiaries. A few weeks later, Lewis' daughter, June Holton, arranged for Walker to meet with another attorney, Thomas Pujadas, who assisted her in initiating divorce proceedings against Van Anda. Shortly thereafter, in March 2003, Pujadas, who was never made

aware of the will Walker had executed the previous month, drafted another will for Walker, this time naming Lewis as sole beneficiary of Walker's entire estate less $20, which was to be divided equally between Walker's two other sisters. In April 2003, a third attorney, Russell Gillis, was retained to prepare an irrevocable trust naming Lewis as trustee and beneficiary, and a deed conveying the Ray City farm into the trust.

In May 2003, Walker was hospitalized upon experiencing an episode of agitation and paranoia, specifically marked by Walker's insistence that Lewis and other family members were trying to steal her money and control her. Walker was transferred to a mental health facility for evaluation and was subsequently discharged to a nursing home, where she lived until her death in December 2003. Walker's divorce from Van Anda was never finalized. In the months prior to her death, substantially all of Walker's assets — approximately $600,000 in various bank accounts and the farm — had been transferred into the trust, such that very little if anything remained in her estate at the time of her death ten months later.

The case was tried before a jury in April 2006. At trial, Van Anda adduced evidence that he and Walker had been happily married; that Walker had expressed her desire for her assets to pass to Van Anda upon her death; that Lewis and Holton were heavily focused on and involved in Walker's financial and medical affairs from February 2003 until her death; that Walker's faculties were declining as the result of advancing age and a stroke in 2002; and that Walker herself suspected Lewis of trying to steal her money. Evidence was also presented reflecting that, following the death of Walker's first husband in 2000, Lewis had taken Walker to an attorney for the purpose of drafting a will and power of attorney naming Lewis as a beneficiary and attorney-in-fact, and that Walker had revoked both documents shortly thereafter. For her part, Lewis relied largely on the testimony of the various attorneys who had assisted in Walker's affairs to the effect that they believed that Walker was competent and that she understood and desired the results of the various legal documents, including the trust and deed, she executed. The jury returned a verdict in Van Anda's favor, and judgment was entered setting aside the trust and related transfers. Lewis filed motions to set aside the judgment and for new trial, which were both denied. This appeal ensued.

1. Lewis contends that the trial court lacked subject matter jurisdiction to adjudicate the validity of the trust and related transfers because the property in question would, if the trust and transfers were invalidated, revert to Walker's estate, in which Van Anda currently has no interest. Indeed, unless and until the probate court were to determine that Walker's will is invalid and that she thus died

intestate, Van Anda would have no cognizable interest in the trust property regardless of whether the trust and related transfers were invalidated.

Inasmuch as this argument challenges Van Anda's standing in this case, it is controlled adversely to Lewis by *Johns v. Morgan*, 281 Ga. 51 (635 SE2d 753) (2006). Furthermore, it is undisputed that Lewis failed to raise the issue until she filed her motion to set aside judgment. The failure to assert a plaintiff's alleged lack of standing prior to the entry of judgment results in the waiver of such defense. *Barfield v. Aiken*, 209 Ga. 483 (3) (74 SE2d 100) (1953); *Dorsey Heating & Air Conditioning Co. v. Gordon*, 162 Ga. App. 608 (292 SE2d 452) (1982). See also *Keeley v. Cardiovascular Surgical Assocs.*, 236 Ga. App. 26 (1) (510 SE2d 880) (1999) (failure to raise lack of capacity defense prior to judgment results in waiver). The timely assertion of a standing defense is necessary

> to prevent precisely what happened here. Discovery, a pre-trial conference and order, and a fairly lengthy trial consumed judicial as well as private resources unnecessarily, if plaintiff had no capacity to pursue this claim. It is primarily a threshold question and generally collateral to the real issues. . . . The object of lawsuits is to resolve merits of disputes, not to engage in a meaningless frustration of them.

*Adams v. Cato*, 175 Ga. App. 28, 29 (1) (332 SE2d 355) (1985).[1] Accordingly, because Lewis did not challenge Van Anda's standing to sue until after judgment was entered in this case, Lewis has waived her right to challenge Van Anda's standing.

Furthermore, Van Anda's purported lack of standing does not affect the superior court's subject matter jurisdiction over his equitable claims, and thus Lewis' attempt to characterize the alleged lack of standing (a waivable defect) as a lack of subject matter jurisdiction (a non-waivable defect) is misguided.[2] Thus, the trial court did not err by denying the motion to set aside judgment on these grounds.

---

[1] Indeed, Lewis acknowledges as much in her brief, stating bluntly that this issue should have been addressed at an earlier stage and that "the case should never have gone to trial." Notably, Lewis' appellate counsel did not represent her at trial.

[2] Though admittedly the cases bearing on the issue of a potential heir's standing to sue regarding potential assets of an estate have sometimes used the phraseology of jurisdiction rather than standing, the core concept involved centers on the potential heir's relationship to the property at issue and not whether the subject matter of the suit was within the purview of the adjudicating court. See *Julian v. Brooks*, 269 Ga. 167 (495 SE2d 569) (1998); *Morgan v. Morgan*, 256 Ga. 250 (2) (347 SE2d 595) (1986). The distinction between standing and subject matter jurisdiction can get obscured where the superior court is asked to use its equitable powers to intervene directly in a parallel pending probate proceeding. See, e.g., *Furr v. Jordan*, 196 Ga. 862 (1) (27 SE2d 861) (1943). However, where, as here, the claimant is simply asking

2. Lewis also contends that the judgment is void on its face as to Walker's estate. However, the judgment does not require any action on the part of the estate or any representative thereof, and therefore it is not invalid on such grounds. The trial court properly rejected Lewis' contentions in this regard.

3. Lewis similarly contends that the judgment is void because Van Anda "failed to name a proper party." By this, we assume Lewis refers to the failure to name an indispensable party, see OCGA § 9-11-19, contending that, because the action sought to cancel a trust and deed executed by Walker, Walker's estate or a representative thereof was an indispensable party. See *Czyz v. Czyz*, 240 Ga. 806 (242 SE2d 585) (1978) (all parties to deed or their representatives are indispensable in equitable action to cancel deed). Even assuming Lewis is correct under these circumstances, this argument is meritless because Lewis, by failing to raise it until after judgment was entered, has waived her right to assert it. *Jones v. Dykes*, 231 Ga. App. 110 (4) (497 SE2d 828) (1998).[3]

4. Lewis next asserts that the evidence was insufficient to support the finding of undue influence. "If there is any evidence to support the jury's verdict, the appellate court will uphold the trial court's denial of a motion for new trial based on sufficiency of the evidence. [Cit.]" *Lillard v. Owens*, 281 Ga. 619, 620 (1) (641 SE2d 511) (2007). "For undue influence to be sufficient to invalidate a [trust], it must amount to deception or force and coercion . . . so that the [grantor] is deprived of free agency and the will of another is substituted for that of the [grantor]." (Footnote omitted.) *Smith v. Liney*, 280 Ga. 600, 601 (631 SE2d 648) (2006). It is not enough to show that there was an opportunity to exert influence coupled with a substantial benefit under the trust; actual deprivation of the grantor's free will is required. *Holland v. Holland*, 277 Ga. 792, 793 (2) (596 SE2d 123) (2004). Undue influence may be shown by a wide range of circumstantial evidence, as direct evidence thereof is rare. *Trotman v. Forrester*, 279 Ga. 844 (621 SE2d 724) (2005). " 'A presumption of undue influence arises when it is shown that the [trust] was made at

---

the superior court to exercise its equitable powers to set aside various inter vivos transfers that were allegedly induced through undue influence, the fact that the property that was the subject of such transfers might end up in an estate that is currently the subject of pending probate proceedings does not mean that the superior court's adjudication of the claims in equity would encroach upon the probate court's exclusive jurisdiction under OCGA § 15-9-30 (a) (1) over the probate of wills.

[3] Lewis' reliance on *S.D.H. Company v. Stewart*, 135 Ga. App. 505 (2) (218 SE2d 268) (1975), for the proposition that courts will sometimes excuse the failure to assert this defense prior to judgment, is misplaced, because in that case, though the defense was found not to have been "precisely present[ed] . . . at the earliest practicable time," id. at 509, the issue of whether a non-party corporation was the true party in interest had been raised in the defendant's answer and on motion for directed verdict.

the request of a person who receives a substantial benefit, who is not a natural object of the maker's [bounty], and who held a confidential relationship with the [grantor]. (Cit.) . . .' [Cit.]" *Holland*, supra at 793 (2). A confidential relationship exists where a person is so situated as to exercise a controlling influence over the will, conduct, and interest of the grantor. See id. Further, evidence of the grantor's weakened mental state may support a finding of undue influence, as "the influence necessary to dominate a weak mind is less than that necessary to dominate a strong one." (Footnote omitted.) *Trotman*, supra at 844.

Applying these principles, we hold that the evidence presented at trial amply supports the jury's finding of undue influence. There was evidence that Walker had a long-standing close relationship with Van Anda, culminating in marriage, and that Walker and Lewis, by contrast, had had scant personal contact in the two to three years preceding the chain of events recited herein. There was also evidence of a similar attempt by Lewis in 2000 to intercede in her sister's estate planning affairs to her own benefit and contrary to Walker's wishes. In addition, there was evidence that Walker had, prior to the events in question, told various friends and family members, and even her lawyer, that she did not want Lewis to receive any of her assets on her death. It is undisputed that Walker was 87 years old and had had a relatively recent stroke, from which she continued to suffer some residual effects. There was evidence to support the finding of a confidential relationship between Walker and Lewis beginning in February 2003, in that Walker was then dependent on Lewis for housing and transportation, and in that Lewis and/or her daughter arranged for, and often attended and actively participated in, the meetings Walker had with her various attorneys, and arranged for and attended many if not all of Walker's doctors' appointments (at least up until Walker's hospitalization in May 2003). In addition, there was evidence that Lewis "badmouthed" Van Anda to Walker, accusing him of having affairs and taking Walker's money, which Van Anda maintained was untrue. Finally, there was evidence that Walker herself expressed the belief that Lewis was trying to control her and take her money. We conclude that the evidence is more than sufficient to support a finding of undue influence.

5. In her final enumeration of error, Lewis contends that the trial court's jury charge on undue influence was erroneous in that it (1) omitted the requirement that the will of another be substituted for that of the grantor; and (2) failed to define "weakened mentality" such as may warrant a presumption of undue influence in the absence of contrary evidence. However, as Lewis concedes, her counsel failed to object to the court's charge when given and thereafter affirmatively stated that Lewis had no objections to the charge as given. Therefore,

Lewis has waived her right to object at this late juncture. See OCGA § 5-5-24 (a) ("no party may complain of the giving or the failure to give an instruction to the jury unless he objects thereto before the jury returns its verdict"). Contrary to Lewis' contention, the charge was not harmful as a matter of law such as would justify review even absent timely objection. See id. at (c) (notwithstanding party's failure to object, court must review charge containing "substantial error" that was "harmful as a matter of law"). As to the first of the two alleged errors, review of the entirety of the charge reveals that the language Lewis contends was omitted was actually included at an earlier point in the charge.[4] As to the second, though the court did not explicitly define the phrase "weakened mentality," it did refer at various points to mental impairments caused by advanced age or disease. Thus, the charge taken as a whole was not misleading and did not constitute error as a matter of law. See *Adams v. Metropolitan Atlanta Rapid Transit Auth.*, 246 Ga. App. 698 (1) (a) (542 SE2d 130) (2000) (charge that failed to define term of art not harmful as matter of law), abrogated on other grounds by *Golden Peanut Co. v. Bass*, 249 Ga. App. 224 (2) (547 SE2d 637) (2001).

*Judgment affirmed. All the Justices concur, except Sears, C. J., who concurs in Divisions 2, 3, 4 and 5 and in the judgment.*

DECIDED NOVEMBER 21, 2007 —
RECONSIDERATION DENIED DECEMBER 13, 2007.

*Jack J. Helms, Jr., James D. Hudson*, for appellant.
*Thomas & Settle, W. Vincent Settle III*, for appellee.

---

[4] We also note that the language in question was actually requested by Lewis and only slightly modified by the trial court, with Lewis' agreement, to fit the evidence in the case. See *Moody v. Dykes*, 269 Ga. 217 (3) (496 SE2d 907) (1998) (no review under OCGA § 5-5-24 (c) where instruction in question induced by counsel for complaining party).