Branch, Judge.
This appeal concerns whether and under what circumstances Georgia public policy prohibits enforcement of an in terrorem, or no contest, provision of a trust. In this case, fourteen beneficiaries of a trust, allegedly in good faith and upon probable cause, challenged the legal validity of the trust based on a claim of undue influence over the settlor by her children, who are also the trustees. We conclude that because the legislature, not this Court, determines Georgia public policy, the trial court did not err by enforcing the in terrorem clause against a claim of undue influence and therefore granting partial summary judgment to the trustees on that claim. For the reasons shown below, however, we vacate that portion of the trial court's decision that addressed the appellants' claims of breach of fiduciary duty and remand the case for the court to consider whether the appellants' claim of tortious interference with the expectation of a bequest or gift is barred by the in terrorem clause.
"On appeal from a grant of a motion for summary judgment, we review the evidence de novo, viewing it in the light most favorable to the nonmovant, to determine whether a genuine issue of fact remains and whether the moving party is entitled to judgment as a matter of law." Western Indus. v. Poole , 280 Ga. App. 378, 379, 634 S.E.2d 118 (2006) (footnote omitted).
So viewed, the record shows that on or about September 11, 2012, Ms. Olga Casteleiro de Goizueta, heir to her husband's fortune, executed a durable power of attorney ("POA") granting authority to her son Javier Goizueta and daughter Olga Rawls to undertake a variety of actions in her name and on her behalf, including the power to create, revoke, or amend any trust for her benefit, as well as "to do anything that I could do personally or as Trustee."
In February 2013, Ms. Goizueta executed the 31st Amendment and Restatement of her revocable pourover trust and named Javier Goizueta and Olga Rawls as trustees. Schedule B to the trust provided for specific monetary gifts for fifteen of her staff and employees (fourteen of whom are appellants)[1] upon Ms. Goizueta's death. The trust provided that Ms. Goizueta reserved the right to change these gifts by a written instrument signed by Ms. Goizueta and the trustees and that the trustees had absolute discretion "to determine *649 the validity of any such written instrument amending Schedule B." The February 2013 trust also contained a "No Contest Provision," which provided, in relevant part, that under the following condition:
[s]hould any beneficiary, singly or in conjunction with any other person or persons, directly or indirectly (whether or not in good faith and with probable cause), contest or initiate proceedings to contest in any court the validity of all or any part of my Will or this Agreement or any other trust created by me or, in any manner, attack or seek to impair or invalidate any of the provisions of my Will or this Agreement or any other trust created by me or to prevent any provision of my Will or this Agreement or any other trust created by me from being carried out in accordance with its terms ...
that beneficiary "shall be subject to forfeiture under this Article whether or not such action is taken in good faith or with probable cause, it being my intention that any such action shall result in forfeiture no matter what the facts and circumstances surrounding such action."
In March 2013, Ms. Goizueta amended Schedule B to reduce the amounts provided to some of the appellant-beneficiaries.
On August 1, 2013, Ms. Goizueta signed the 32nd Amendment and Restatement of her revocable pourover trust. A separate "Family Trust" was executed the same day. Ms. Goizueta again named Olga Rawls and Javier Goizueta as trustees. The August 2013 trust document did not include a Schedule B, but, as in the February 2013 trust, it included an almost identical "No Contest Provision."
Ms. Goizueta died in November 2015, following which the same trustees made distributions to some of the appellants from the Family Trust in amounts less than those listed in Schedule B of the February 2013 pourover trust. Some of the appellants retained counsel, who sent a letter to the trustees requesting that they pay the full amounts listed in Schedule B of the February 2013 trust. The trustees responded with an action in Fulton County Superior Court seeking a declaratory judgment that the August 2013 trust was valid. They also asserted a claim for forfeiture of the distributions made to the appellants from the Family Trust based on the in terrorem provision contained in the August 2013 trust, and made various claims against an individual that are not relevant to this appeal.
The appellants answered and filed a counterclaim in which they alleged that during the years preceding her death, Ms. Goizueta was isolated and dominated by her children, who schemed to enrich themselves with their mother's money rather than distribute it in accordance with her wishes. The appellants alleged that Ms. Goizueta's children exercised undue influence over their mother, who had diminished capacity at the time, and prepared and caused their mother to execute the August 2013 trust, which eliminated the specific gifts for the appellants found in Schedule B to the February 2013 trust. In the counterclaim, the appellants sought a declaration that the in terrorem provision in the August 2013 trust is unenforceable to the extent it precludes them from asserting (1) a claim of undue influence by the trustees who caused Ms. Goizueta to change her estate documents to revoke her intended gifts to the appellants; (2) a claim of tortious interference with the appellants' expectation of bequests or gifts; and (3) a claim of breach of fiduciary duty by the trustees.
In response, the trustees filed a motion for partial summary judgment on appellants' counterclaim regarding the enforceability of the in terrorem provision, which the trial court granted following a hearing. In its order, the trial court declined appellants' invitation to "judicially adopt the good faith/probable cause exception" to in terrorem clauses, as doing so was "beyond the province of a court." Instead, the trial court elected to defer "any policy decision regarding the adoption of the good faith/probable cause exception to the General Assembly." The trial court further held that the public policy exception allowing an action against trustees based on their alleged misconduct in their role as trustees did not apply because appellants were seeking to challenge, rather than enforce, the provisions of the August 2013 trust. Finally, the trial court rejected *650 appellants' due process challenge to the in terrorem provision because the appellants "never received a legally protectable interest" in the estate.
1. The appellants first argue that Georgia should recognize a probable cause exception to enforcement of in terrorem provisions, and that by holding otherwise, the lower court misinterpreted OCGA § 53-12-22 (b). The appellants further argue that they should be able to bring their claims in good faith without forfeiting what they were given under the trust.
(a) We first agree with the trial court that the in terrorem clause meets the requirement found in OCGA § 53-12-22 (b), the only Georgia statute that addresses in terrorem clauses in trusts.[2] That subsection provides:
A condition in terrorem shall be void unless there is a direction in the trust instrument as to the disposition of the
property if the condition in terrorem is violated, in which event the direction in the trust instrument shall be carried out.
OCGA § 53-12-22 (b).[3] See also Mary F. Radford, Wills, Trusts, Guardianships, and Fiduciary Administration, 65 Mercer L. Rev. 295, 297 (2013) ("Both the Georgia Probate Code and the Georgia Trust Code recognize the validity of [no contest] clauses provided that the will or trust contains a direction as to the disposition of the forfeited property in the event the clause is violated.") (footnote omitted). As the trial court found, the in terrorem clause in Ms. Goizueta's trust contains an alternative disposition to The Goizueta Foundation in the event the clause is triggered. Accordingly, the trial court correctly found that the clause at issue passed the test found in OCGA § 53-12-22 (b).[4]
(b) The appellants argue that even if the clause satisfies OCGA § 53-12-22 (b), this Court should adopt a good faith/probable cause exception to the enforceability of such a clause. Appellants argue that such an exception might provide that in terrorem clauses are enforceable "unless probable cause exist[s] for instituting the proceeding," Restatement (Second) of Property: Donative Transfers § 9.1, and that such a proceeding be brought in good faith. See 1 Ga. Wills & Administration § 8:7 ("Many states refuse to enforce no-contest clauses if there is probable cause for the contest or the contest is brought in good faith.").
Under Georgia law, a trust may be attacked where the trust results from undue influence. See, e.g., Davison v. Hines , 291 Ga. 434, 437 (1), 729 S.E.2d 330 (2012) (some evidence showed that persons with a confidential relationship took such an active role creating a trust that their will was substituted for that of the principal such that the documents were the product of undue influence). But, as shown above, in terrorem clauses protecting against such a challenge are allowed under Georgia law with only one codified limitation, that being the alternative disposition provision discussed above. The parties have not cited any other statutory limitation on such clauses, and we find none, let alone a good faith/probable cause exception to enforcement of an in terrorem clause.
Although our appellate courts sometimes rely on authorities addressing no contest clauses in wills when analyzing no contest clauses in trusts,[5] there are relevant differences in the codified law. Specifically, OCGA § 53-4-68 (a), pertaining to wills, provides that "[c]onditions in a will[, such as a condition in terrorem,] that are impossible, illegal, or against public policy shall be void." Subsection (a) to the trust statute, which parallels OCGA § 53-4-68 (a), provides only that "[a] trust may be created for any lawful *651 purpose." OCGA § 53-12-22 (a). Thus, cases that quote the statute pertaining to wills to the effect that "conditions which are impossible, illegal, or against public policy shall be void" are distinguishable. See, e.g., Sinclair v. Sinclair , 284 Ga. 500, 502 (2), 670 S.E.2d 59 (2008) (involving an in terrorem clause in a will); Taylor v. Rapp , 217 Ga. 654, 656, 124 S.E.2d 271 (1962) (citing former version of OCGA § 53-4-68 ); Cohen v. Reisman , 203 Ga. 684, 684 (2), 48 S.E.2d 113 (1948) (involving an in terrorem clause in a will).
Next, despite the fact that various forms of good faith/probable cause exceptions have been a part of the law in other states for many years[6] and included in the Uniform Probate Code[7] and the Restatement (Second) of Property,[8] the Georgia Trust Code does not include the good faith/probable cause rule proposed by the appellants. Even though the General Assembly revised the Georgia Trust Code in 2010, it did not codify the good faith/probable cause exception at that opportunity. Because the legislature is presumed to act with full knowledge of the existing state of the law,[9] it follows that the legislature chose not to adopt a good faith/probable cause exception to enforcement of no contest clauses in trusts.[10]
Thus, there is no statutory good faith/probable cause exception to enforcement of in terrorem clauses in the Trust Code and no provision for a public policy exception in OCGA § 53-12-22. And the legislature recently amended the Trust Code without including these exceptions. Accordingly, we decline to adopt such exceptions.[11] "[T]he legislature, and not the courts, are empowered by the Constitution to decide public policy, and to implement that policy by enacting laws." Commonwealth Inv. Co. v. Frye , 219 Ga. 498, 499, 134 S.E.2d 39 (1963) ; see also Perdue v. Baker , 277 Ga. 1, 14 (6), 586 S.E.2d 606 (2003) ("The core legislative function is the establishment of public policy through the enactment of laws.") (footnote omitted). We therefore conclude that the trial court correctly held that no good faith/probable cause exception exists.
2. The trial court erred, however, by declaring as a matter of law that the valid in terrorem clause in the August 2013 trust bars the appellants' claims of breach of fiduciary duty. It also failed to consider whether the clause bars the appellants' claim of tortious interference with an expectation of bequests or gifts.
*652 In their counterclaim, the appellants sought a declaration that the in terrorem provision in the August 2013 trust was unenforceable to the extent it precludes them from asserting their claims, "includ[ing] without limitation" (1) a claim of undue influence by the trustees who caused Ms. Goizueta to change her estate documents to revoke her intended gifts to the appellants; (2) a claim of breach of fiduciary duty by the trustees; and (3) a claim of tortious interference with the appellants' expectation of bequests or gifts. In response, the trustees moved for partial summary judgment on the legal question of whether the in terrorem clause was enforceable against all of the appellants' claims. In granting partial summary judgment, the trial court first held that there was no good faith/probable cause exception, with which we agree, as shown in Division 1.[12]
(a) The court then held as a matter of law that the in terrorem clause was valid and enforceable against the appellants' claims of breach of fiduciary duty. The appellants had alleged that in addition to being the trustees of the August 2013 trust, the appellees were also the trustees of the February 2013 trust, which provided for the gifts over to the appellants. The appellants alleged that as a result of the powers granted to the trustees under the POA and the February 2013 trust, as well the activities of the trustees, the trustees took on fiduciary duties associated with the February 2013 trust at that time. The appellants alleged that the trustees then breached these duties by unduly influencing Ms. Goizueta to amend Schedule B of that trust and to procure the August 2013 trust to their benefit.
There is an exception to the enforcement of in terrorem clauses when litigation is brought seeking to require a trustee to comply with his fiduciary duties. Callaway v. Willard , 321 Ga. App. 349, 358 (3) (a), 739 S.E.2d 533 (2013). Such a clause cannot be enforced against a litigant when "the purpose of such litigation is to enforce the will and to compel the executor to carry out its terms." Cohen , 203 Ga. at 685 (4), 48 S.E.2d 113. Similarly, and in a case following Reisman but involving a trust, it was held that "[a] beneficiary [of a trust] assuredly is empowered to enforce the provisions of a trust, no matter the terms of any in terrorem clause." Snook v. Sessoms , 256 Ga. 482, 482, 350 S.E.2d 237 (1986). Thus, in terrorem clauses are enforceable against challenges to a will itself, such as a caveat that seeks to "destroy the Will altogether," but not enforceable against "a petition for accounting and for the removal of an executor ... because it first affirms the validity of the will." Norman v. Gober , 292 Ga. 351, 354 (1), 737 S.E.2d 309 (2013).
Based on this law, the trial court held that the appellants' claim that the trustees breached their fiduciary duties associated with the February 2013 trust was merely an attempt to "destroy the August 2013 Trust altogether" and that therefore the in terrorem clause could be enforced. We disagree. Setting aside all other issues related to the appellants' claims of breach of fiduciary duty, including the standing of beneficiaries to assert such a claim and whether fiduciary duties attach at the formation of a revocable trust,[13] this claim is an attempt to hold the trustees accountable to the extent that they had fiduciary responsibilities under the February 2013 trust to which they failed to adhere. It is not a claim to set aside the August 2013 trust akin to a challenge to the validity of a will. It is an attempt to enforce the fiduciary duties associated with the earlier trust. Such a claim is subject to the exception to enforcement of in terrorem clauses under Snook v. Sessoms and its progeny. Accordingly, we disagree with the trial court that the in terrorem clause is enforceable with regard to such claims. We therefore vacate that portion of the trial court's order. The same result applies to the extent the appellants have asserted a breach of fiduciary duty claim regarding the separate Family Trust.
*653 (b) Unaddressed by the trial court is the appellants' claim of tortious interference with the expectation of a bequest or gift and whether such a claim also falls into the above-exception to enforcement of in terrorem clauses. See generally 1 Ga. Wills & Administration § 4:10, and cases cited therein. The court should address this issue upon remand.
Judgment affirmed in part, vacated in part, and case remanded with direction.
Dillard, C.J., Miller, P.J., Doyle, P.J., Andrews, McMillian, and Reese, JJ., concur. Ray, J., concurs fully and specially. Rickman and Mercier, JJ., concur in Div. 2 and in the judgment. Barnes, P.J., Ellington, P.J., McFadden, P.J., and Bethel, J., dissent.
RAY, Judge, concurring fully and specially.
I concur with the majority's decision in this case, not because I personally like the outcome for these parties, but because I agree with the majority's proper exercise of judicial restraint. Under the facts as articulated by the appellants, the imposition of a good faith exception into the in terrorem clause has some appeal. I can't deny that. I do not discount the dissent's contention that such an exception would be a desirable expression of public policy for our state. Where I disagree with the dissent, however, is its contention that it is the role of the courts, and the Court of Appeals of Georgia in particular, to create this exception and to insert it into our law. It is not. In my view, that privilege exclusively belongs with the General Assembly of Georgia.
As Supreme Court Justice Neil Gorsuch recently stated, "it is the job of the judge to apply [the law], not amend the law ... even when he might well prefer a very different outcome." Indeed, I expect that many a judge has felt pain in applying a law as written by a legislative body to which the judge didn't agree. That sentiment is not new and isolated to the facts here. Indeed, I personally feel discomfort every time I must rule that a sympathetic plaintiff who has been harmed by a government actor cannot pursue his or her claim due to sovereign immunity. Yet, I understand that it is the role of the General Assembly to determine when and if the State of Georgia can be sued, and that our role in the courts is to apply the rules that the legislature has given to us.
Earlier in my career, I was fortunate to have served 6 years as a member of the Georgia Senate. In that role, it was my privilege to work with 235 other legislators in making sometimes difficult choices regarding the laws of our state. When I moved to the judiciary, however, my focus necessarily changed. As a judge when I encounter a statute to which I do not agree or which I believe is incomplete, I must defer to the decisions that the legislature has made as to what to include and not to include in such law. I might prefer a different outcome, but it is not my role as a judge to decide on the rules, just to apply them. Separation of powers demands nothing less.

The fourteen appellants are Jenifer Duncan, Jennifer Curry, Amanda Smith, Shelia McCloud, Rosalba Arellano Jones, Judy Cunningham, Gloria Espinosa, H.L. Bowen, Clyde Thomas Padgett, W.F. Timms, E.G. Brown, C.W. Payne, Stephen W. Norman, and Joseph Cochran.

We recognize that OCGA § 53-12-22 (b), as written, does not purport to embody all possible law regarding the enforceability of in terrorem clauses in trusts.

The Probate Code has a similar provision regarding wills. See OCGA § OCGA § 53-4-68 (b).

The dissent's rhetorical strawman argument notwithstanding, we have not misread OCGA § 53-12-22 (b) at all. In fact, that Code section says nothing whatsoever about the existence of good faith/probable cause exception to enforcement of an in terrorem clause in a trust.

See, e.g., Snook v. Sessoms , 256 Ga. 482, 482, 350 S.E.2d 237 (1986), citing Cohen v. Reisman , 203 Ga. 684, 685 (4), 48 S.E.2d 113 (1948).

1 Ga. Wills & Administration § 8:7 ("Many states refuse to enforce no-contest clauses if there is probable cause for the contest or the contest is brought in good faith.").

See Uniform Probate Code § 3-905 (1969) ("A provision in a will purporting to penalize any interested person for contesting the will or instituting other proceedings relating to the estate is unenforceable if probable cause exists for instituting proceedings.").

See Restatement (Second) of Property, Don. Trans. § 9.1 (1983)
An otherwise effective provision in a will or other donative transfer, which is designed to prevent the acquisition or retention of an interest in property in the event there is a contest of the validity of the document transferring the interest or an attack on a particular provision of the document, is valid, unless there was probable cause for making the contest or attack.

It is well established that
a statute is presumed to be enacted by the legislature with full knowledge of the existing condition of the law and with reference to it. It is therefore to be construed in connection and in harmony with the existing law, and as a part of a general and uniform system of jurisprudence, and its meaning and effect is to be determined in connection, not only with the common law and the constitution, but also with reference to other statutes and the decisions of the courts.
Retention Alternatives, Ltd. v. Hayward , 285 Ga. 437, 440 (2), 678 S.E.2d 877 (2009) (citation omitted).

Statutory history, such as shown above, differs from legislative history, which we have not employed as suggested by the dissent. Compare the definition of "legislative history"-"The proceedings leading to the enactment of a statute, including hearings, committee reports, and floor debates," with the definition of "statutory history"-"The enacted lineage of a statute, including prior laws, amendments, codifications, and repeals." Black's Law Dictionary (10th ed. 2014).

Having failed to address the Georgia law cited above, including the plain difference between statutory law regarding in terrorem clauses in wills and trusts, the dissent turns instead to the law of other states to support its argument.

The trial court noted that "[q]uestions as to whether [the appellants'] actions may have triggered forfeiture of their distributions under the no contest clause are not before the Court."

The trial court assumed for purposes of its decision that the trustees were in fact trustees of the February 2013 trust at the time that Ms. Goizueta signed the August 2013 trust.