**FIFTH DIVISION**
**MCFADDEN, C. J.,**
**RICKMAN, P. J., and SENIOR APPELLATE JUDGE PHIPPS.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

*DEADLINES ARE NO LONGER TOLLED IN THIS COURT. ALL FILINGS MUST BE SUBMITTED WITHIN THE TIMES SET BY OUR COURT RULES.*

**April 27, 2021**

# In the Court of Appeals of Georgia

A21A0001. GILLER et al. v. SLOSBERG.

PHIPPS, Senior Appellate Judge.

This contentious case involves a family dispute among siblings which arose after their elderly father revoked an existing power of attorney, executed a new power of attorney, and made changes to certain financial accounts relating to his estate-planning strategy. See *Slosberg v. Giller*, 341 Ga. App. 581 (801 SE2d 332) (2017) (affirming in part and reversing in part the superior court's grant of summary judgment to both parties on various issues). The case is now before this Court a second time. In this appeal, sisters Suzanne Giller and Lynne Amy Seidner[1] seek to reverse a jury verdict and superior court judgment in favor of their brother, Robert

---

[1] Seidner's first name is also spelled "Lynn" in the record.

Slosberg. For the reasons that follow, we reverse the judgment of the superior court and remand the case for further proceedings consistent with this opinion.

This case does not involve a will. Rather, it concerns three documents which purported to distribute much of the assets of the father, David K. Slosberg: the David K. Slosberg Asset Protection Trust II, dated January 17, 2014 (Trust #2), a beneficiary form designating Giller and Seidner as beneficiaries of their father's IRA Account with First National Bank & Trust ("FNBT") (the "IRA Account"), and a beneficiary form designating Giller, Seidner, and Slosberg as beneficiaries of their father's Agency Account with FNBT (the "Agency Account"), with Giller and Seidner each receiving forty percent of the assets and Slosberg receiving twenty percent. Slosberg believed that Giller and Seidner exerted undue influence over their father and caused their father to execute these three documents, drastically reducing his right to their father's assets.

Approximately one year before their father died, Slosberg filed suit against Giller and Seidner. After their father's death, Slosberg filed his third amended complaint, which is the operative pleading for this appeal. The amended complaint included a number of claims, including claims for undue influence, fraud, conversion, and trover against Giller and Seidner based on allegations that their father's actions

were the result of diminished mental capacity and undue influence. The complaint sought, among other relief, the imposition of a constructive trust to the extent Giller and Seidner had absconded with assets to which Slosberg was entitled, and injunctive relief to prohibit Giller and Seidner from transferring or receiving any assets of their father, including, inter alia, Trust #2, the IRA Account, and the Agency Account until the court determined whether the execution of these document was the result of undue influence. Giller and Seider answered and asserted counterclaims against Slosberg for defamation and tortious interference, seeking both a declaratory judgment and equitable relief.

Following a two and one-half week trial, the jury found in favor of Slosberg on his claims for undue influence as to all three documents: Trust #2, the IRA Account, and the Agency Account.[2] The superior court entered final judgment on the jury's verdict, ruling "that the challenged documents pertaining to the Accounts are void and are hereby set aside, as are any transfers made pursuant to those documents." The superior court further noted that the evidence produced at trial demonstrated that the total amount contained in the accounts at the time of the father's death was

---

[2] The jury found in favor of Giller and Seidner on Slosberg's claim for tortious interference with gift expectancy. In addition, the jury found that Slosberg was not entitled to recover attorney fees and expenses of litigation or punitive damages.

3

$2,372,000.01, and that all assets contained in these three accounts "had been distributed by FNBT, either to [Giller and Seidner] or into the registry of the Court, apart from $140,413.67 held in the IRA account as of December 31, 2018." The superior court, therefore, imposed a constructive trust in favor of Slosberg for $1,056,482.31, which the court determined was Slosberg's one-third share of the accounts, plus prejudgment interest, post judgment interest, and costs. Specifically, the superior court's judgment stated:

> The Court directs that the Clerk distribute to [Slosberg] all monies held in the registry of the Court with respect to this matter, totaling $568,919.96 as of June 28, 2019. The Court further directs that any monies retained by FNBT in the Accounts be distributed to [Slosberg]. To the extent that these monies are insufficient to satisfy this Judgment, [Giller and Seidner] are liable as constructive trustees for any unpaid balance.

Giller and Seidner filed a motion for judgment notwithstanding the verdict and for new trial, which the superior court denied. This appeal followed.

We first note that Giller and Seidner do not claim that the evidence was insufficient to support the jury's findings or in any way challenge the jury's findings that they wrongfully procured the three documents and their assets through the exercise of undue influence over their father. Rather, they attack the superior court's

4

final judgment, arguing that (1) the in terrorem clause contained in Trust #2 precluded Slosberg from receiving any assets from that trust, (2) the superior court's imposition of a constructive trust in Slosberg's favor usurps the probate court's jurisdiction, and (3) the final judgment awarded damages above those to which Slosberg was entitled.[3] These issues appear to raise mixed questions of fact and law. With mixed questions of fact and law, this Court accepts the trial court's findings on disputed facts and witness credibility unless clearly erroneous, but independently applies the legal principles to the facts. *Garden Club of Ga. v. Shackelford*, 274 Ga. 653, 655 (1) (560 SE2d 522) (2002); *Suggs v. State*, 272 Ga. 85, 88 (4) (526 SE2d 347) (2000).

1. Giller and Seidner assert that the superior court erred in allowing Slosberg to "enjoy the benefits he forfeited by initiating actions disallowed by the no-contest clause" in their father's trust. Specifically, they argue that the superior court's final judgment is inconsistent with the valid and enforceable in terrorem clause[4] contained

---

[3] "For convenience of discussion, we have taken the enumerated errors out of the order" in which Giller and Seidner have listed them. *Foster v. Morrison*, 177 Ga. App. 250, 250 (1) (339 SE2d 307) (1985).

[4] An in terrorem clause is "[a] provision designed to threaten one into action or inaction; esp., a testamentary provision that threatens to dispossess any beneficiary who challenges the terms of the will." Black's Law Dictionary (10th ed. 2014), pp. 947, 1209.

in Trust #2, which provides that benefits revoked under the clause become a part of the remainder of the Trust Estate. They further assert that not only was Slosberg not entitled to benefits under Trust #2 because of the in terrorem clause, but they were entitled to judgment in their favor on the undue influence claim as to the trust.[5] We conclude that Slosberg forfeited any benefits under Trust #2 by violating the trust's in terrorem clause, and the superior court erred in not only awarding a constructive trust based on any benefits he would have received under the trust, but also in permitting the claim to proceed to the jury. We note that neither the IRA Account nor the Agency Account contained in terrorem clauses, and our decision in this division, therefore, is limited to Trust #2.

The statute addressing the rules for trust in terrorem clauses when the trust at issue was executed in 2014 stated:

(a) A trust may be created for any lawful purpose.

---

[5] Giller and Seidner moved for partial summary judgment on the ground that Slosberg's claim for undue influence was barred by the in terrorem clause in Trust #2. The superior court denied the motion. Giller and Seidner raised the same issue during a directed verdict at the close of evidence, and that motion also was denied. They again raised the issue in their motion for judgment notwithstanding the verdict, and the superior court again denied it, noting that "the Court previously considered and rejected [the argument] on summary judgment and at directed verdict."

(b) A condition in terrorem shall be void unless there is a direction in the trust instrument as to the disposition of the property if the condition in terrorem is violated, in which event the direction in the trust instrument shall be carried out.

OCGA § 53-12-22 (2014).[6] "[A]lthough in terrorem clauses are permitted by statute

. . . they are not favored in the law. Furthermore, because in terrorem clauses result

in forfeitures, they must be strictly construed." *Callaway v. Willard*, 321 Ga. App.

349, 353 (1) (739 SE2d 533) (2013) (citations and punctuation omitted).

The in terrorem clause at issue here in Trust #2 provided:

[S]hould my son, Robert Kenneth Slosberg, or his legal representative, or either of my daughters, or their legal representatives[,] contest or initiate legal proceedings to contest the validity of this Trust or my Last Will and Testament executed by me and dated October 31st, 2013, or any provision from being carried out in accordance with its terms as I expressed (whether or not in good faith and with probable cause), then all the benefits provided herein for my son and/or for my daughters are revoked and annulled. Such benefits, if not a part of the residue of my estate, shall go over to and become a part of the remainder of my Trust Estate.

---

[6] The statute was amended, effective January 1, 2021, to add a clause to subsection (b) ("except as otherwise provided in subsection (c) of this Code section") and a new subsection (c) that reads: "(c) A condition in terrorem shall not be enforceable against an individual for: (1) Bringing an action for interpretation or enforcement of a trust instrument; (2) Bringing an action for an accounting, for removal, or for other relief against a trustee; or (3) Entering into a settlement agreement." The result we reach in this case would be the same under current Georgia law.

Giller and Seidner argue that the in terrorem clause reflects their father's "plain and unambiguous intent . . . to preserve the sanctity of the plan he, over a period of years, created for his assets and his children." While this argument ignores Giller and Seidner's undisputed role in unduly influencing their father to secure the trust containing the in terrorem clause, we are constrained to conclude that Slosberg's "initiation of legal proceedings triggered the [trust's] in terrorem clause[.]" *Norman v. Gober*, 292 Ga. 351, 354 (1) (737 SE2d 309) (2013).

Although Slosberg attempts to distinguish *Duncan v. Rawls*, 345 Ga. App. 345 (812 SE2d 647) (2018), that case is directly on point and leads us to the inescapable conclusion that the in terrorem clause in Trust #2 bars any claim attacking the trust, including a claim that the trust was executed as the result of undue influence. *Duncan* concerned "whether and under what circumstances Georgia public policy prohibits enforcement of an in terrorem, or no contest, provision of a trust." Id. at 345. The case involved beneficiaries of a trust, allegedly in good faith and upon probable cause, challenging the legal validity of the trust based on a claim of undue influence. Id. "We conclude[d] that because the legislature, not this Court, determines Georgia public policy, the trial court did not err by enforcing the in terrorem clause against a

8

claim of undue influence and therefore granting partial summary judgment to the trustees on that claim." Id. Specifically, this Court held as follows:

> Under Georgia law, a trust may be attacked where the trust results from undue influence. But . . . in terrorem clauses protecting against such a challenge are allowed under Georgia law with only one codified limitation, that being the alternative disposition provision discussed above. The parties have not cited any other statutory limitation on such clauses, and we find none, let alone a good faith/probable cause exception to enforcement of an in terrorem clause.

Id. at 348 (1) (b) (citation omitted).

A similar analysis was applied in *Howell v. Bates*, 350 Ga. App. 708, 715 (3) (830 SE2d 250) (2019), where this Court affirmed the trial court's ruling that the petitioner had violated an in terorrem clause and forfeited her distribution under a trust. The trust in that case provided that

> if a person contested or initiated legal proceedings either to challenge the validity of the Trust, the Will, or of any provision in either document, or to prevent any provision in either document from being carried out in accordance with its terms (whether or not in good faith and with probable cause), then all benefits provided for such person under the Trust and the Will would be revoked and annulled.

Id. at 714 (3) (punctuation and footnote omitted). This Court specifically held that by filing actions challenging the validity of a will with an in terrorem clause, including one in which the petitioner claimed the will was invalid due to alleged undue

influence, the petitioner "clearly violated the plain language of the 'no contest' clause in the Trust." Id. at 715 (3) (b).

While we sympathize with Slosberg, and we agree that it is poor public policy to permit individuals exerting undue influence over the creation of trusts to immunize their actions by including in terrorem clauses in the trusts, we must exercise judicial restraint because "[t]he legislature, and not the courts, is empowered by the Constitution to decide public policy, and to implement that policy by enacting laws." *Duncan*, 345 Ga. App. at 350 (1) (b) (punctuation omitted). To that end, this Court repeatedly has stated that

> [s]tatutes should be read according to the natural and most obvious import of the language, without resorting to subtle and forced constructions, for the purpose of either limiting or extending their operation. In reviewing a statute, we presume that the legislature enacts all statutes with knowledge of the existing laws.

*Howell*, 350 Ga. App. at 712 (2).

A review of OCGA § 53-12-22, which addresses in terrorem clauses in trusts, and OCGA § 53-4-68, which addresses in terrorem clauses in wills, indicates that *Duncan*, supra, was correctly decided. After our decision in *Duncan*, a full court opinion that included a special concurrence and two dissents, the legislature amended both OCGA §§ 53-12-22 and 53-4-68, adding three identical circumstances under

10

which in terrorem clauses shall not be enforceable in trusts or wills. OCGA §§ 53-12-22 (c), 53-4-68 (c). The legislature did *not*, however, choose to add or amend the trust statute to void in terrorem clauses in trusts that are impossible, illegal, or against public policy, as they are in wills. See OCGA § 53-4-68 (a) ("Conditions in a will that are impossible, illegal, or against public policy shall be void."). Instead, the legislature retained OCGA § 53-12-22 (a), which merely states, "[a] trust may be created for any lawful purpose." "Because the legislature is presumed to act with full knowledge of the existing state of the law, it follows that the legislature chose not to adopt a good faith/probable cause exception to enforcement of no contest clauses in trusts." *Duncan*, 345 Ga. App. at 349-350 (1) (b). Strictly construing the in terrorem clause, which we are obligated to do, *Callaway*, 321 Ga. App. at 353 (1), and presuming the legislature enacted and amended OCGA § 53-12-22 with knowledge of the existing laws, which we are obligated to do, *Howell*, 350 Ga. App. at 712 (2), we conclude that the superior court erred in failing to find that the in terrorem clause in Trust #2 resulted in Slosberg's forfeiture of benefits under Trust #2.

Moreover, the superior court further erred in permitting the undue influence claim regarding Trust #2 to proceed to the jury. The Georgia Supreme Court and this

11

Court have stated that, under language similar to the in terrorem clause at issue, the mere "initiation" of legal proceedings triggers the trust's in terrorem clause. See *Norman*, 292 Ga. at 354 (1). With that in mind, both appellate courts have affirmed summary judgment rulings finding that an in terrorem clause bars an individual from proceeding with an action – even one claiming undue influence. See *Norton v. Norton*, 293 Ga. 177, 179 (744 SE2d 790) (2013) (affirming trial court's grant of summary judgment to defendants after finding that *filing* a caveat claiming undue influence extinguished any and all interests the plaintiffs had under the will due to an in terrorem clause); *Duncan*, 345 Ga. App. at 345 ("[T]he trial court did not err by enforcing the in terrorem clause against a claim of undue influence and therefore granting partial summary judgment to the trustees on that claim."). See also *In re Estate of Johnson*, 352 Ga. App. 164, 167-168 (834 SE2d 283) (2019) (affirming probate court's decision that proposed declaratory judgment action, if *filed*, would "trigger" and violate the in terrorem clause). This case law leads us to the inescapable conclusion that the in terrorem clause in Trust #2 barred Slosberg from pursuing his undue influence action as to that trust, and the superior court erred in permitting the issue to go to the jury and accepting the jury's verdict on that claim.

2. Because the in terrorem clause discussed in Division 1 applies only to Trust #2 and not the IRA Account or the Agency Account, we turn to Giller and Seidner's next enumeration of error.

Giller and Seidner assert that "[t]he trial court's award of a constructive trust improperly usurps the probate court's jurisdiction." Giller and Seidner do not assert that the superior court lacked jurisdiction to determine whether the three documents were procured by undue influence; rather, they assert that the superior court did not have authority to create a constructive trust because its authority is limited to a decision about whether the documents should be set aside.[7] According to Giller and Seidner, once the superior court invalidated and set aside the documents at issue in this case, all assets should have reverted to the father's estate for distribution by the probate court. We find that, as a general rule, a superior court has the authority to create a constructive trust to correct fraud or unjust enrichment. However, because

---

[7] To the extent that Giller and Seidner have attempted to expand this enumeration of error to include any argument unrelated to the superior court's award of a constructive trust, such as whether the superior court had jurisdiction to hear any of Slosberg's claims, those argument will not be considered. See, e.g., *Steed v. Deal*, 225 Ga. App. 35, 35 (2) (482 SE2d 527) (1997) (a party may not expand her enumeration of error by arguments and citation in the brief).

13

there has been no finding of fraud or unjust enrichment in this case, we agree that the constructive trust imposed here was improper.

It is well settled that Georgia probate courts are vested with "original, exclusive, and general jurisdiction" over, inter alia, the probate of wills and "[a]ll other matters and things as appertain or relate to estates of deceased persons[.]" OCGA § 15-9-30 (a) (1), (11). However, it is equally well settled that OCGA § 53-7-60 grants superior courts concurrent jurisdiction with probate courts "over the settlement of accounts of personal representatives."

> Although superior courts are reluctant to interfere in the administration of estates, they may do so where there is a danger of loss or other injury to a party's interest, or where equitable interference is necessary for the full protection of the rights of the parties in interest.

*Lee v. Lee*, 260 Ga. 356, 356 (1) (392 SE2d 870) (1990) (citation omitted). Accordingly, "a superior court can exercise its concurrent jurisdiction over the administration of estates when complete and adequate remedies at law are unavailable." *Jonas v. Jonas*, 280 Ga. App. 155, 161 (3) (b) n.15 (633 SE2d 544) (2006).

"Trusts are peculiarly subjects of equity jurisdiction." OCGA § 53-12-6 (a). And, such jurisdiction lies in the superior court, not the probate court. *In re Longino*,

14

281 Ga. App. 599, 602 (3) (636 SE2d 683) (2006). Regarding constructive trusts, OCGA § 53-12-132 (a) provides that "[a] constructive trust is a trust implied whenever the circumstances are such that the person holding legal title to property, either from fraud or otherwise, cannot enjoy the beneficial interest in the property without violating some established principle of equity."[8] A request for the imposition of a constructive trust is not an independent cause of action, but is a device by which property might be recovered if a party succeeds on a claim of fraud or unjust enrichment. See *Morrison v. Morrison*, 284 Ga. 112, 113 (1) (663 SE2d 714) (2008); *St. Paul Mercury Ins. Co. v. Meeks*, 270 Ga. 136, 138 (2) (508 SE2d 646) (1998); see also *Lee*, 260 Ga. at 357 (1) ("[A] constructive trust may be imposed where property has been acquired by fraud, or where, though not acquired by fraud it is against equity that it should be retained by the person who holds it."); *Jonas*, 280 Ga. App. at 162 (3) (c) (A constructive trust "is a remedial device created by a court of equity to prevent unjust enrichment.") (citation and punctuation omitted). "Unjust enrichment applies when as a matter of fact there is no legal contract, but when the party sought

_____

[8] This statute was revised effective 2010; however, the language in OCGA § 53-12-132 (a) is identical to that used in former Code Section 53-12-93 (a). See *Edwards v. Edwards*, 267 Ga. 780, 781 (2) (482 SE2d 701) (1997). Therefore, case law prior to 2010 provides guidance regarding the imposition of constructive trusts.

to be charged has been conferred a benefit by the party contending an unjust enrichment which the benefitted party equitably ought to return or compensate for." *Tuvim v. United Jewish Communities, Inc.*, 285 Ga. 632, 635 (2) (680 SE2d 827) (2009) (citation and punctuation omitted).

The questions then are whether "equitable interference is necessary for the full protection" of Slosberg's rights, and whether it is against equity to allow Giller and Seidner to retain any of the assets included in the IRA Account and Agency Account which they acquired through undue influence over their father. *Lee*, 260 Ga. at 356-357 (1). These questions necessarily turn on whether Giller and Seidner were unjustly enriched because, as the Georgia Supreme Court inferred in *Tuvim*, a superior court can impose a constructive trust if the evidence supports a finding that parties were unjustly enriched. *Tuvim*, 285 Ga. at 634-635 (2).

In *Tuvim*, the Supreme Court found that the superior court erred in imposing a constructive trust on certain financial instruments because no party received any unjust enrichment. 285 Ga. at 634-635 (2). According to the Court, because there was no evidence of unjust enrichment, "the financial instruments . . . would simply become a part of [the] estate[,]" and "any financial benefit that [the party] would be entitled to receive would involve application of the laws of intestacy, not any sort of

16

unjust enrichment." Id. at 635 (2). This holding inferred that a constructive trust would have been warranted if evidence of unjust enrichment existed. Similarly, in *Jonas*, this Court found that a superior court properly refused to dismiss a granddaughter's claim requesting the imposition of a constructive trust on life insurance proceeds her grandmother had received from the grandfather's estate because her grandmother would have been unjustly enriched by receiving the money. 280 Ga. App. at 161-162 (3) (c).

The authority cited by Giller and Seidner do not compel a different result. To support their argument that a superior court lacks authority to impose a constructive trust once it sets aside financial documents on the basis of undue influence, Giller and Seidner cite OCGA § 53-12-45 (c), claiming the statute demands that distributions of a trust deemed invalid must be returned to the estate. That statute, however, does not concern the imposition of a constructive trust or declare that a superior court is authorized only to set aside an invalid trust and must leave distribution of the assets to the probate court. It merely states that "[a] beneficiary of a trust that is determined to have been invalid shall be liable to return any distribution received." OCGA § 53-12-45 (c).

17

Giller and Seidner also cite *Lewis v. Van Anda*, 282 Ga. 763, 765 (1) (653 SE2d 708) (2007), for the proposition that where a trust is invalidated by a superior court, the property must revert to the estate and be disbursed by the probate court. However, that proposition was stated in the *Lewis* opinion as a party's contention; it was not a ruling of the trial court or this Court. Id. at 764 (1). In fact, the *Lewis* opinion addressed the issue in the context of standing, which is not at issue in this case: "[U]nless and until the probate court were to determine that [the decedent's] will is invalid and that she thus died intestate, [the plaintiff] would have no cognizable interest in the trust property regardless of whether the trust and related transfers were invalidated." Id. at 764-765 (1). In addition, although the superior court in *Lewis* exercised its equitable powers to set aside a trust and related transfers procured as a result of undue influence, there was no mention of unjust enrichment or whether a constructive trust may have been warranted under the circumstances of that case.

Turning to the specifics in this case, after the jury found that Giller and Seidner acquired assets by wrongfully exerting undue influence to cause their father to execute beneficiary forms for the IRA Account and the Agency Account, the superior court exercised its discretion to impose a constructive trust over the proceeds of the assets in those accounts. The superior court was within its authority to impose such

18

a trust if "equitable interference [was] necessary for the full protection" of Slosberg's rights and Giller and Seidner were unjustly enriched by retaining any of the assets they wrongfully procured. *Lee*, 260 Ga. at 356-357 (1), (2). However, the jury did not render a verdict regarding fraud or unjust enrichment, and the trial court did not make any findings in its final order regarding unjust enrichment. The superior court simply awarded a constructive trust. As we found in *Tuvim*, without a finding of unjust enrichment, the assets controlled by the financial instruments involved here "would simply become a part of [the] estate[,]" and "any financial benefit that [Slosberg] would be entitled to receive would involve application of the laws of intestacy, not any sort of unjust enrichment." *Tuvim*, 285 Ga. at 635 (2).

In addition, even if facts supported a finding that Giller and Seidner were unjustly enriched, the superior court's final judgment did not limit its constructive trust award to the amount of any unjust enrichment. Instead, the superior court noted that "the only evidence introduced regarding damages were the amounts in the three accounts at issue at the time of [the father's] death[,]" unilaterally determined that Slosberg was entitled to one-third of the assets contained in the three accounts at issue, and imposed a constructive trust for that one-third amount. This usurps the

19

probate court's jurisdiction to apply the laws of intestacy. See *Tuvim*, 285 Ga. at 635 (2). Moreover, as we held in Division 1, Slosberg is precluded from receiving any benefit regarding Trust #2 due to the in terrorem clause contained in that document. Accordingly, the superior court's imposition of a constructive trust in the amount of $790,666.67 was error, the final judgment is reversed, and the case is remanded for further proceedings consistent with this opinion.

3. Giller and Seidner contend that the superior court erred in awarding prejudgment interest and funds that Slosberg already has received. Given that we have reversed the superior court's final judgment, we decline to address these issues on appeal and instead urge the superior court to consider them on remand should the court determine that the imposition of a constructive trust is still proper.

*Judgment reversed and case remanded. Rickman, P. J., concurs*; *McFadden, C.J., dissents.*

A21A0001. GILLER et al. v. SLOSBERG.

MCFADDEN, Chief Judge, dissenting.

Under fundamental and settled law, the verdict and judgment that the trust before us was procured by undue influence entailed a determination that the grantor had been without capacity to execute it and therefore that it was void at its inception. The in terrorem clause falls along with the rest of the instrument. There is nothing to the contrary in *Duncan v. Rawls*, 345 Ga. App. 345 (812 SE2d 647) (2018). Adopting a rule to the contrary entails disapproving decisions of our Supreme Court. So I respectfully dissent.

"A person has capacity to create an inter vivos trust to the extent that such person has legal capacity to transfer title to property inter vivos. A person has capacity to create a testamentary trust to the extent that such person has legal capacity to devise or bequeath property by will." OCGA § 53-12-23.

2

Here the verdict is an authoritative determination that the grantor lacked the capacity to create a trust. "For undue influence to be sufficient to invalidate a trust, it must amount to deception or force and coercion so that the grantor is deprived of free agency and the will of another is substituted for that of the grantor." *Lewis v. Van Anda*, 282 Ga. 763, 766 (4) (653 SE2d 708) (2007) (citation and punctuation omitted). See also *Mullis v. Welch*, 346 Ga. 795, 799 (20 (b) (815 SE2d 282) (2018) ("[The standard required for invalidation of a trust] is the same standard required for the invalidation of a will or a deed as the result of undue influence over a testator/testatrix or grantor.")

Wills and trusts executed by one without the legal capacity to do so are void from the inception. They are stillborn. Their terms are, and always were, entirely without effect. See *JR Const./Elec. v. Ordner Const. Co.*, 294 Ga. App. 453, 455 (669 SE2d 224) (2008); cf. *Smith v. Morris, Manning & Martin*, 264 Ga. App. 24, 26 (589 SE2d 840) (2003) (physical precedent only). Including in terrorem clauses.

Especially in terrorem clauses. "[A]lthough in terrorem clauses are permitted by statute, OCGA § 53–12–22(b), they are not favored in the law." *Callaway v. Willard*, 321 Ga. App. 349, 353 (1) (739 SE2d 533) (2013) (citation and punctuation omitted).

> There is no affirmative statutory authority in Georgia for [in terrorem clauses]. Instead, they are authorized indirectly by [OCGA § 53-12-22 (b) ("[a] condition in terrorem shall be void unless there is a direction in the trust instrument as to the disposition of the property if the condition in terrorem is violated, in which event the direction in the trust instrument shall be carried out, except as otherwise provided in subsection (c) of this Code section.")]

*Dick v. State*, 248 Ga. 898, 899 (1), n. 2 (287 SE2d 11) (1982) (discussing extraordinary motions for new trial). So it is of no consequence whether the void in terrorem clause before us was, by its terms, purportedly triggered.

The majority invests extraordinary potency in those disfavored clauses. Under today's decision they can substitute for capacity and animate stillborn instruments.

Our decision in *Duncan v. Rawls*, supra, does not require that result. It correctly restated that, while "a trust may be attacked where the trust results from undue influence . . . in terrorem clauses protecting against such a challenge are allowed under Georgia law[.]" *Duncan*, supra at 348 (1) (b). Protection is one thing. Imposing a high cost for unsuccessful challenges is one thing. Our decision today is quite another. Under our decision today, an in terrorem clause affords complete invulnerability.

It is true that *Duncan*'s introductory paragraph says that "the trial court did not err by enforcing the in terrorem clause against a claim of undue influence and

4

therefore granting partial summary judgment to the trustees on that claim." Id. at 345. But the beneficiaries' relevant claim was for a declaration that they had a good faith basis and probable cause for alleging undue influence and so should not suffer forfeiture even if their allegations were rejected at trial. About that claim, *Duncan*'s holding is that it fails at the threshold. "We therefore conclude that the trial court correctly held that no good faith/probable cause exception exists." Id. at 350 (1) (b).

The trustees' relevant claim was that, by seeking such a declaration, the beneficiaries had triggered the in terrorem clause. That claim, *Duncan* recognizes, had not been decided below and so was not before us. "The trial court noted that '[q]uestions as to whether [the appellants'] actions may have triggered forfeiture of their distributions under the no contest clause are not before the Court.'" Id. at 350 (2), n. 12.

So even if the reference to "enforcing" in *Duncan*'s introductory paragraph can be read to undertake to do what the majority says it does, it is dicta at most.

None of the other cases cited by the majority are to the contrary. In none of them, as detailed in the margin, had an instrument containing an in terrorem clause

5

been found by a jury to be the product of undue influence.[1] And none of them stand for the proposition that an in terrorem clause can supply a lack of capacity and render an instrument invulnerable to challenge as the product of undue influence.

There appear to be no previous cases in which our appellate courts have faced the audacious claim the appellants make here: even though they have been found to have procured the trust before us by means of undue influence and do not contest that finding, they nevertheless claim to be fully entitled to all of their ill-gotten gains.

---

[1] *Howell v. Bates* does reject Howell's "assert[ion] that the [trial] court erred in finding that she violated the 'no contest' provision of the Trust and, thus, forfeited her right to a distribution under the Trust" by, among other things, filing a caveat "asserting that the Will was invalid because Bates had exerted 'undue influence' over the decedent." *Howell v. Bates*, 350 Ga. App. 708, 710 (830 SE2d 250) (2019). But as to the merits of the caveat, Appellant Howell argued only "that, because the probate court has not yet ruled on her caveat to the Will or appointed someone as administrator of the estate, there was no one to represent the estate's interests in this case, so any ruling by the superior court in this case was premature." Id. at 711. So while the issue before us today was lurking in the record, it was not addressed. "Issues merely lurking in the record, neither brought to the court's attention nor expressly ruled upon, have not been decided so as to constitute precedent." *Eady v. Capitol Indem. Corp.*, 232 Ga. App. 711, 713 (502 SE2d 514) (1998).

In *Norton v. Norton* the caveat had already been rejected, and that rejection had been affirmed on appeal. *Norton v. Norton*, 293 Ga. 177 (744 SE2d 790) (2013).

*In re Estate of Johnson*, as the majority correctly explains, holds that "the probate court properly concluded that the Johnsons' declaratory judgment action would trigger the in terrorem clause[.]" *In re Estate of Johnson*, 352 Ga. App. 164 (834 SE2d 283) (2019).

6

But our Supreme Court has assumed the contrary. Its decisions reflect an assumption that an instrument proven to have been so procured it is void — in terrorem clause and all.

In *Norman v. Gober* the caveat had been brought in the name of a child. Our Supreme Court concluded that the child was being used by his mother as a catspaw — in derogation of his own interests. Its analysis reflects an assumption that the in terrorem clause would be effective only if the caveat action were unsuccessful:

> If Caveator's action were successful, Caveator's mother, an heir-at-law, would benefit from the non-probate of the Will through intestacy, while Caveator's contingent interest would be concomitantly destroyed. If Caveator's action were unsuccessful, the testamentary share of Caveator's mother would remain intact, while Caveator's contingent interest would be invalidated by Decedent's in terrorem clause.

*Norman v. Gober*, 288 Ga. 754, 755 (707 SE2d 98) (2011).

In *Lillard v. Owens* our Supreme Court upheld a judgment voiding a will procured by means of undue influence — including and notwithstanding its in terrorem clause. The case was a dispute about two competing wills between the children of a testator's first marriage and the stepchildren of his second. A will executed in February of the year of his death "[f]or the most part . . . divided the testator's property evenly among all the children[.]" *Lillard v. Owens*, 281 Ga. 619

7

(641 SE2d 511) (2007). But a will entered in October of that same year, twelve days before his death, "left most of the testator's property to [the children of the first marriage], with bequests to the [stepchildren of the second] and an in terrorem clause. Id. at 619.

After a six-day trial, the trial court entered judgment on a verdict upholding the February will and invalidating the October will — including its in terrorem clause. Id. at 620. Our Supreme Court affirmed, rejecting the contention that "the evidence was insufficient to support a finding of undue influence or lack of testamentary capacity." Id. at 620 (1).

It is true that *Lillard* did not address the question whether "trial court erred in permitting the claim to proceed to the jury." Majority, p. 7. But the assumption that it did not err by doing so is necessarily implicit.

So to reach the decision the majority reaches today, we need to disapprove our Supreme Court's opinions in *Lillard* and *Norman* to the extent that they so imply. I don't think we can do that.