**SECOND DIVISION
MILLER, P. J.,
RICKMAN and REESE, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules**

**June 21, 2019**

# In the Court of Appeals of Georgia

A19A0338. HOWELL v. BATES, AS TRUSTEE OF THE ANNE S. FLORANCE REVOCABLE TRUST.

REESE, Judge.

In this declaratory judgment action, Emily Howell appeals from the grant of partial summary judgment to Phillip Bates, as Trustee of the "Anne S. Florance Revocable Trust." Howell contends that the superior court erred in ruling that the estate of her aunt, Anne S. Florance (the "decedent"), was not a necessary party to this action and that Howell's challenge to the validity of the Trust was time-barred. Howell also asserts that the court erred in finding that she violated the "no contest" provision of the Trust and, thus, forfeited her right to a distribution under the Trust. For the reasons set forth, infra, we affirm.

Viewing the undisputed facts in favor of Howell, as the nonmovant,[1] the record shows that, in October 1997, the decedent, with the assistance of her estate-planning attorney, Suzanne Tucker Plybon, executed a "Last Will and Testament" and documents establishing a revocable, inter vivos trust entitled the "Anne S. Florance Revocable Trust." Over the next several years, with the assistance of Plybon, and the decedent's personal attorney, Bates, the decedent amended and re-executed both documents about ten times to address changes in tax and estate laws, to provide for the residue of her estate to go to charitable organizations, to change beneficiaries, and/or to change the amounts to be distributed to certain beneficiaries. On February 20, 2013, the decedent executed a final amended will ("Will") and trust ("Trust").[2]

---

[1] See *Benton v. Benton*, 280 Ga. 468, 470 (629 SE2d 204) (2006).

[2] On the same day, in addition to the Will and Trust, the decedent also executed a separate document, an "Assignment" of all of her tangible and intangible property "now or hereafter owned by [the decedent]" to the Trust ("Assignment"). The assignment of intangible property included, but was not limited to, all of the decedent's "lawsuits, choses in action, claims, . . . [and any] and all amounts which may potentially be payable to the estate of the [decedent if she] is not living at the time when such amounts would otherwise be distributed[.]"

2

The Will contained a "pour-over" provision which bequeathed all of the decedent's tangible and intangible assets to the Trust upon her death.[3] The Will also named Bates as the executor of the decedent's estate. The Trust provided that the decedent would serve as the trustee until her incapacity or death, at which time Bates would become the trustee.

In addition, both documents included "no contest" or "in terrorem"[4] clauses that were essentially mirrors of one another. For example, the "no contest" clause in the Trust provided:

> Should any person contest or initiate legal proceedings to contest the validity of this Trust or of the Grantor's Will or of any provision herein or in the Grantor's Will, or to prevent any provision in either document from being carried out in accordance with its terms (whether or not in good faith and with probable cause), then such person shall be deemed to have predeceased the Grantor, and all of the benefits provided for such person in this Trust and under the Grantor's Will are revoked and

---

[3] According to Plybon's affidavit, the provision was a "backup mechanism" to ensure "that any assets remaining in the estate at the time of death pour[ed] over to (i.e., are transferred into) the trust." Plybon explained that the "process of transferring one's property into a revocable trust is a typical one for clients who wish[ed] to use such a trust as their primary estate planning device. Client objectives in such instances include[d] but [were] not limited to avoiding probate, avoiding unnecessary litigation, and/or maintaining confidentiality."

[4] See Division 3, infra.

annulled, and any property to which such person would have been entitled shall be distributed in equal shares among the [charities that will receive the residue of the Trust].[5]

The decedent died on May 14, 2013; at the time of her death, the decedent was a widow with no direct descendants. Bates, as executor of the decedent's estate, promptly filed the Will in the Probate Court of Fulton County, but he did not take steps to probate the Will because the estate had no assets, as they had been automatically transferred to the Trust upon the decedent's death.[6]

---

[5] According to the affidavit of Plybon, the decedent's estate-planning attorney, the decedent

> was very concerned that certain of her family members would try to contest her [W]ill [and/or] her Trust and seek to obtain control of her assets. [The decedent] had already been involved in contentious litigation with some of her family members, and was concerned that they or others would file litigation to attack her estate planning. [The decedent] insisted on including a "no-contest" provision in the documents, and throughout the years, she would ask what could be done to minimize the risk that her testamentary wishes would be subject to attack. Both the 2013 Will and the 2013 Trust contain no-contest provisions that are intended to effectuate this testamentary intention of [the decedent]. The "no-contest" provisions, as are typical, disinherit anyone who attempts to have the will or trust declared invalid.

Similarly, in his affidavit, Bates stated that the decedent "was exceedingly worried that one of her family members would contest her testamentary plans. Indeed, one or more family members explicitly threatened to do so."

[6] During the summary judgment hearing in this case, counsel for both parties in this case stipulated that the estate contained no property or other assets.

4

On July 25, 2013, Bates sent a letter to the decedent's niece, Howell (the appellant in this case), informing her that the decedent had provided that $25,000 was to be distributed to her as a beneficiary of the Trust.[7] Attached to the letter was a redacted copy of the page of the Trust that contained the distribution to Howell. Howell received the letter the next day.[8]

In January 2016, Howell filed a verified "Petition for Letters of Administration" in the probate court, claiming that the decedent died "intestate[,]" i.e., "without a valid Will and Testament[,]" and asking to be appointed as administrator of the decedent's estate. In response, on February 12, 2016, Bates filed a "Petition to Probate [the decedent's] Will in Solemn Form" in the probate court, as well as a motion to dismiss Howell's petition. Howell then filed a caveat to Bates's petition to probate the Will in the probate court on February 25, 2016, objecting to Bates's appointment as executor of the estate and asserting that the Will was invalid

---

[7] In the letter, Bates mentioned a conversation that he had had with Howell about the decedent's estate "a week or two" before Bates sent Howell the letter.

[8] In the petition, Bates claimed that he had tendered the $25,000 to Howell, but that she had refused to accept it. In response, Howell denied that she had declined the money, and asserted that Bates had improperly refused to give her the money unless she signed a form indemnifying him and releasing him from liability, which she refused to do unless he showed her the complete Trust document.

5

because Bates had exerted "undue influence" over the decedent. In addition, Howell obtained two ex parte temporary restraining orders ("TROs") prohibiting Bates from distributing or disbursing any property, money, or assets of the Trust.[9]

On November 10, 2016, Bates filed a petition for declaratory judgment[10] in the Superior Court of Fulton County, seeking rulings that the Trust was valid and in full force and effect; the transfers of the decedent's real and personal property to the Trust were valid, binding, and free from undue influence; the statute of limitation period for challenging the validity of the Trust had expired; and Howell had violated the "no contest" clause of the Trust and, thus, had forfeited her right to a distribution under the Trust. In her answer to the petition, Howell asserted, inter alia, that the Trust was

---

[9] In his affidavit, Bates contended that, in an effort to minimize any damage resulting from the TROs, and in order to be able to properly administer the Trust, he consented to a more narrowly drafted, amended TRO that only prohibited him from making distributions to the Trust beneficiaries and restricted the fees he could receive as the trustee.

[10] See OCGA §§ 9-4-2 (a) (declaratory judgments generally); 9-4-4 (a) (3) (Declaratory judgment actions may be filed by an executor or trustee "[t]o determine any question arising in the administration of the estate or trust, including questions of construction of wills and other writings."); see also *Sinclair v. Sinclair*, 284 Ga. 500, 501 (1) (670 SE2d 59) (2008) (OCGA § 9-4-4 (a) (3) "is to be liberally construed and administered so as to afford relief from uncertainty and insecurity with respect to rights, status, and other legal relations.") (citations and punctuation omitted).

invalid. Bates moved for partial summary judgment,[11] and, following a hearing, the superior court granted the motion. This appeal followed.

> In order to prevail on a motion for summary judgment under OCGA § 9-11-56, the moving party must show that there exists no genuine issue of material fact, and that the undisputed facts, viewed in the light most favorable to the nonmoving party, demand judgment as a matter of law. Moreover, on appeal from the denial or grant of summary judgment[,] the appellate court is to conduct a de novo review of the evidence to determine whether there exists a genuine issue of material fact, and whether the undisputed facts, viewed in the light most favorable to the nonmoving party, warrant judgment as a matter of law.[12]

With these guiding principles in mind, we turn now to Howell's specific claims of error.

1. Howell contends that the estate may have claims against the Trust, or against Bates as the trustee, that would be impacted by the instant litigation, so the superior court erred in ruling that the estate was not a necessary party to this action. She also

---

[11] Still pending in the superior court is a claim for damages resulting from Howell's allegedly improper procurement of the two TROs that, according to Bates, prevented him from carrying out his required duties as the trustee, "interfered with the orderly administration of the Trust[,]" and "put the Trust at risk of violating its terms."

[12] *Benton*, 280 Ga. at 470.

argues that, because the probate court has not yet ruled on her caveat to the Will or appointed someone as administrator of the estate, there was no one to represent the estate's interests in this case, so any ruling by the superior court in this case was premature.

OCGA § 9-11-19 (a) provides:

A person who is subject to service of process shall be joined as a party in the action if:
(1) In his absence complete relief cannot be afforded among those who are already parties; or
(2) He claims an interest relating to the subject of the action and is so situated that the disposition of the action in his absence may:
(A) As a practical matter impair or impede his ability to protect that interest; or
(B) Leave any of the persons who are already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of his claimed interest.

In arguing that the estate was a necessary party to this suit, Howell contends that the estate *might* have claims challenging the validity of the Trust that are based on allegations that Bates had unduly influenced the decedent prior to the execution of the final Will and Trust in 2013.[13] As the superior court ruled, however, Howell

---

[13] Notably, as shown above, while Bates was the decedent's personal attorney during the relevant time period, the decedent had another attorney handling her estate

8

failed to identify any claims that the estate might have against the Trust that would be prejudiced by the court's rulings on the instant declaratory judgment petition, nor did Howell show any reason why the court was unable to afford complete relief to the parties in this case in the estate's absence.[14]

Moreover, pretermitting whether the estate would have been able to assert claims against the Trust in this action,[15] the superior court's order limits the court's rulings solely to the parties in the instant case and explicitly states that the order "is not intended to bind, and does not bind, any non-party (e.g., the Estate) to this litigation or affect any otherwise valid claims any non-party may hold."

Under these circumstances, we hold that Howell has failed to demonstrate any reversible error.

_____

planning, including the execution of the Will and Trust. In addition, Bates is not a named or residual beneficiary under the Will or Trust.

[14] See OCGA § 9-11-19 (a).

[15] Even if the estate had standing to assert a claim challenging the validity of the Trust, such claim might be time-barred under OCGA § 53-12-45 (a). See Division 2, infra. Further, the Assignment that was executed on the same day as the Will and Trust transferred to the Trust all of the estate's lawsuits and claims, including those that might arise in the future, for all amounts "which may potentially be payable to the estate[.]" This presents an issue as to whether the estate still has the capacity to assert any claims against the Trust and/or Bates. Those issues, however, are not before this Court in this appeal.

2. Howell contends that the superior court erred in ruling that OCGA § 53-12-45 (a) was a statute of repose and that, as a result, she was time-barred from challenging the validity of the Trust. She also argues that the court erred in ruling that, even if the statute was a statute of limitation, she had failed to demonstrate any fraud by Bates that would have tolled the running of the limitation period. We disagree.

> Statutes should be read according to the natural and most obvious import of the language, without resorting to subtle and forced constructions, for the purpose of either limiting or extending their operation. In reviewing a statute, we presume that the legislature enacts all statutes with knowledge of the existing laws. Moreover, in specifically reviewing a statute to determine whether it was intended as a statute of repose, we consider that the distinction between the statute of limitation and the statute of repose is clear. A statute of limitation is a procedural rule limiting the time in which a party may bring an action for a right which has already accrued. A statute of ultimate repose delineates a time period in which a right may accrue. If the injury occurs outside that period, it is not actionable. Furthermore, a statute of repose is also distinct from a statute of limitation in that a statute of repose stands as an unyielding barrier to a plaintiff's right of action. The statute of repose is absolute; the bar of the statute of limitation is contingent. The statute of repose destroys the previously existing rights so that, on

10

the expiration of the statutory period, the cause of action no longer exists.[16]

The statute at issue in this case, OCGA § 53-12-45 (a), states that "[a]ny judicial proceeding to contest the validity of a trust that was revocable immediately before the settlor's death shall be commenced within two years of the settlor's death."

The superior court concluded that, based upon the meaning and purpose of OCGA § 53-12-45 (a), the provision constituted a statute of repose that could not be tolled.[17] Further, the superior court ruled that, because the decedent died in May 2013, the repose period expired in May 2015. Thus, to the extent Howell was challenging the validity of the Trust in her January 2017 answer in the instant case,[18] the court ruled that such challenge was barred as a matter of law.

---

[16] *Trax-Fax, Inc. v. Hobba*, 277 Ga. App. 464, 466-467 (2) (a) (627 SE2d 90) (2006) (punctuation and footnotes omitted).

[17] See *Trax-Fax, Inc.*, 277 Ga. App. at 466-467 (2) (a).

[18] Although Howell challenged the validity of the Will in the probate court in January and February 2016, she had not filed a challenge to the validity of the Trust in either the probate court or the superior court prior to answering the declaratory judgment petition in this case.

The issue of whether Howell timely filed her challenges to the validity of the Will is not before this Court in the instant appeal.

In the alternative, the superior court also ruled that, even if OCGA § 53-12-45 (a) did not constitute a statute of repose, but was, instead, a statute of limitation that established a two-year period for challenging the validity of a trust, the limitation period had expired, because more than two years had passed since the decedent's death. The court also ruled that, although the running of a statute of limitation *may* be tolled by fraud that deters or prevents one from challenging the validity of a trust,[19] Howell had failed to meet her burden of establishing an issue of fact as to fraud committed by Bates that would have tolled the running of the limitation period. The record supports this finding by showing, inter alia, that Bates talked with Howell about the decedent's estate in early July 2013 and then notified Howell by letter that she was to receive a $25,000 distribution under the Trust "a week or two" later. It follows that Howell had actual notice of the Trust about two months after the decedent's death and well within the two-year limitation period under OCGA § 53-12-45 (a).

Further, having agreed with the superior court in Division 1, supra, that the estate is not a necessary party in this case, we hold that the fact that no representative

---

[19] See OCGA § 9-3-96 (If the plaintiff has been debarred or deterred from bringing an action due to the defendant's fraud, the period of limitation shall run only from the time of the plaintiff's discovery of the fraud.).

has been appointed to represent the estate in the probate court[20] did not toll the running of the limitation period.

Thus, pretermitting whether the superior court properly ruled that OCGA § 53-12-45 (a) constitutes a statute of repose, we conclude that the court did not err in finding that the statute bars Howell from challenging the validity of the Trust as a matter of law. And, because that ruling eliminated the challenge to the validity of the Trust in this case, the superior court did not err in ruling that, at the time of its ruling, the Trust remained valid and in full force and effect.

3. Howell argues that the superior court erred in ruling that she had violated the "no contest" clause in the Trust and, thus, forfeited her right to a distribution under the Trust. This argument lacks merit.

As shown above, the Trust provided that, if a person "contest[ed] or initiate[d] legal proceedings" either to challenge the validity of the Trust, the Will, or of any provision in either document, or "to prevent any provision in either document from being carried out in accordance with its terms (whether or not in good faith and with

---

[20] See OCGA § 9-3-92 ("The time between the death of a person and the commencement of representation upon his estate or between the termination of one administration and the commencement of another shall not be counted against his estate in calculating any limitation applicable to the bringing of an action, provided that such time shall not exceed five years.").

probable cause),"[21] then all benefits provided for such person under the Trust and the Will would be "revoked and annulled[.]"

(a) Although Howell does not specifically challenge the validity of the "no contest" clause in the Trust, we hold that it is valid and enforceable, because it provides that, if any person violates the clause, his or her distribution becomes part of the residue of the Trust that eventually will be distributed to certain charitable organizations, as required by OCGA § 53-12-22 (b).[22]

(b) As to whether Howell actually violated the "no contest" clause in the Trust, the record shows that Howell filed two legal challenges to the validity of the Will in the probate court. The first was her January 2016 "Petition for Letters of Administration," in which she claimed that the decedent died "intestate[,]" i.e., "without a valid Will and Testament[,]" and the second was her "Caveat to Petition

---

[21] We note that this Court recently affirmed that "there is no statutory good faith/probable cause exception to enforcement of in terrorem clauses in [OCGA § 53-12-22 (b).]" *Duncan v. Rawls*, 345 Ga. App. 345, 350 (1) (b) (812 SE2d 647) (2018).

[22] See OCGA § 53-12-22 (b) ("A condition in terrorem [in a trust] shall be void unless there is a direction in the trust instrument as to the disposition of the property if the condition in terrorem is violated, in which event the direction in the trust instrument shall be carried out."); see also *Duncan*, 345 Ga. App. at 347-348 (1) (a) (This Court held that, because the in terrorem clause in the trust at issue contained an alternative disposition of the forfeited property to a charity if the clause was triggered, the trial court correctly found that the clause was valid under OCGA § 53-12-22 (b).).

to Probate Will in Solemn Form[,]" in which she claimed that the Will was "invalid" due to the alleged undue influence of Bates. By challenging the validity of the Will, both of these actions clearly violated the plain language of the "no contest" clause in the Trust.[23] In addition, by seeking and obtaining the first TRO, which prohibited Bates from making *any* disbursements from the Trust, Howell violated the "no contest" clause of the Trust by preventing Bates from managing the Trust according to its terms.

We hold that the record supports the superior court's conclusion that Howell forfeited her distribution under the Trust by violating the Trust's "no contest" clause.

*Judgment affirmed. Miller, P. J., and Rickman, J., concur.*

---

[23] See *Norman v. Gober*, 292 Ga. 351, 354 (1) (737 SE2d 309) (2013) (holding that, because the "in terrorem" clause in the decedent's will became operative "[s]hould any beneficiary contest or initiate legal proceedings to contest the validity of this Will[,]" the mere initiation of a will contest was sufficient to trigger the "in terrorem" clause) (punctuation and emphasis omitted).