314 Ga. 89
FINAL COPY

S21G1226.  SLOSBERG v. GILLER et al.

WARREN, Justice.

Georgia law permits a settlor or testator to include in his trust instrument or will an "in terrorem clause."  "In terrorem" is a Latin phrase that means "in order to frighten," and this type of clause, which is also known as a "no-contest clause," is "[a] provision designed to threaten one into action or inaction; esp[ecially], a testamentary provision that threatens to dispossess any beneficiary who challenges the terms" of the legal instrument.  See *In Terrorem*, Black's Law Dictionary (11th ed. 2019); *No-contest clause*, Black's Law Dictionary (11th ed. 2019).  Simply put, an in terrorem clause acts as a disinheritance device to dissuade beneficiaries of a trust or a will from challenging the terms of the instrument.

This case involves a contentious family dispute over the effect of an in terrorem clause in a trust instrument that was executed by

David Slosberg ("David"), which said that if his son, Robert Slosberg ("Plaintiff"), or daughters, Suzanne Giller and Lynne Amy Seidner ("Defendants"), challenged the trust, they would forfeit any benefits they were to receive from it. After David died, Plaintiff filed a lawsuit alleging, among other things, that Defendants unduly influenced David to create the trust that contained the in terrorem clause, and at a trial in June 2019, the jury agreed. The trial court accordingly entered an order ruling that the trust instrument was void. Defendants filed a motion for judgment notwithstanding the verdict, arguing, among other things, that the in terrorem clause contained in the trust instrument precluded Plaintiff from asserting the undue-influence claim in the first place. The trial court denied the motion, but the Court of Appeals reversed, holding that the in terrorem clause barred Plaintiff's claim and resulted in his forfeiture of any benefits from the trust. See *Giller v. Slosberg*, 359 Ga. App. 867 (858 SE2d 747) (2021).

We granted Plaintiff's petition for certiorari to address whether that holding was correct. We conclude that it was not. As explained

2

below, the Court of Appeals erred by determining that the in terrorem clause barred Plaintiff's undue-influence claim and resulted in forfeiture of the assets the trust instrument otherwise provided. We therefore reverse that part of the Court of Appeals's decision and remand the case to that court for it to remand the case to the trial court for further proceedings consistent with this opinion.

1. *Background*

(a) *Pertinent Facts and Pretrial Proceedings*

The record shows the following. In May 2013, Plaintiff filed a lawsuit against Defendants in Fulton County Superior Court, claiming, among other things, that they had unduly influenced David, who was then 88 years old, to execute certain estate planning documents.[1] In January 2014, David created an irrevocable trust that, upon his death, would distribute a "nominal bequest" of $25,000 to Plaintiff, with the remaining trust assets bequeathed to

---

[1] Plaintiff also named David's lawyer as a defendant; the lawyer was eventually dismissed from the case.

Defendants. The trust instrument included an in terrorem clause, which said, in pertinent part:

> [S]hould [Plaintiff], or his legal representative, or [Defendants], or their legal representatives[,] contest or initiate legal proceedings to contest the validity of this Trust or my Last Will and Testament . . . , or any provision from being carried out in accordance with its terms as I expressed (whether or not in good faith and with probable cause), then all the benefits provided herein for [Plaintiff] and/or for [Defendants] are revoked and annulled.[2]

The trust instrument then said that any forfeited benefits would become "part of the remainder of [David's] Trust Estate" and would be distributed to the "beneficiaries of [the] residual estate other than such contesting beneficiary"—in this context, to Defendants instead of to Plaintiff.

David died in August 2014. In November 2015, Plaintiff filed a third amended complaint, asserting, among other things, that Defendants unduly influenced David to create the irrevocable trust

---

[2] About three months before he created the trust, David executed a will, which bequeathed the same "nominal" amount to Plaintiff, left the remainder of his estate to Defendants, and contained a substantially similar in terrorem clause. In their brief here, Defendants note that Plaintiff filed a caveat to the will in Fulton County Probate Court and that the matter has been stayed pending resolution of this case.

4

and that the trust was therefore invalid.[3] Defendants filed various

counterclaims, and both parties filed motions for summary

judgment.[4] In May 2016, the trial court issued an order that, as

pertinent here, granted Defendants' motion, ruling that there was

no evidence of undue influence; declared that the trust was therefore

valid; and concluded that under the in terrorem clause, Plaintiff had

forfeited any benefits from the trust. The parties appealed, and the

---

[3] Plaintiff's third amended complaint also alleged that Defendants unduly influenced David to make certain beneficiary designations for his individual retirement account ("IRA") and an agency account; asserted claims of malicious prosecution, fraud, conversion, and trover; and sought a constructive trust regarding the IRA, agency account, and other funds. In addition, Plaintiff later asserted claims of tortious interference with gift expectancy, attorney fees and expenses of litigation, and punitive damages. The trial court ultimately granted Defendants' motion for summary judgment on the claims of malicious prosecution, fraud, conversion, trover, and constructive trust. At trial, the jury found in Plaintiff's favor as to the undue-influence claims regarding the IRA and agency account but rejected his claims of tortious interference with gift expectancy, attorney fees and litigation expenses, and punitive damages. These claims are not at issue in this appeal and, as a result, will not be discussed further.

[4] Defendants asserted claims of defamation, tortious interference, and punitive damages and sought a declaratory judgment and a bill of peace. They also later asserted several breach of contract claims. The trial court ultimately granted Plaintiff's motions for summary judgment and judgment on the pleadings as to most of these claims; the remaining claims were resolved in Plaintiff's favor when the court granted his motion for a directed verdict. None of these claims are at issue in this appeal, so they will not be discussed further.

Court of Appeals—without any mention of the in terrorem clause—reversed the grant of summary judgment because the trial court had improperly "discredited" and "limited the scope of [Plaintiff's] evidence" of undue influence. *Slosberg v. Giller*, 341 Ga. App. 581, 582-583 (801 SE2d 332) (2017).

The case then moved forward in the trial court. In March 2019, Defendants filed a motion for judgment on the pleadings, asserting, among other things, that under the Court of Appeals's whole-court decision in *Duncan v. Rawls*, 345 Ga. App. 345 (812 SE2d 647) (2018), the in terrorem clause contained in David's trust instrument barred Plaintiff from raising an undue-influence claim in the first place.

In April 2019, the trial court denied Defendants' motion, ruling that the in terrorem clause did not bar Plaintiff's undue-influence claim. Agreeing with Plaintiff's assertion that *Duncan* was distinguishable from this case, the trial court concluded that the Court of Appeals in *Duncan* "declined to adopt" a good-faith or probable-cause exception to the enforcement of an in terrorem

6

clause, without addressing whether the beneficiaries' challenge in that case resulted in a forfeiture of their distributions from the trust, "as opposed to precluding them from asserting an undue influence claim."

(b) *The Trial and Motion for Judgment Notwithstanding the Verdict*

The case was tried from June 3 to 20, 2019. At the close of the evidence, Defendants moved for a directed verdict, again arguing, among other things, that the in terrorem clause contained in David's trust instrument barred Plaintiff's undue-influence claim. The trial court denied the motion. At the end of the trial, the jury found that Defendants had unduly influenced David to create the trust.

In August 2019, the trial court entered a final judgment, ruling, in pertinent part, that the trust instrument was void. The court imposed a constructive trust, granting Plaintiff one-third of the amount in David's trust account, which contained about $1,449,000 at the time of trial. The trial court also concluded that Plaintiff was entitled to pre- and post-judgment interest.

Defendants filed a motion for judgment notwithstanding the

7

verdict, again claiming that under *Duncan*, the in terrorem clause barred Plaintiff's undue-influence claim in the first place. After a hearing, the trial court denied the motion in January 2020.

(c) *The Court of Appeals's Decision*

Defendants appealed, contending that the in terrorem clause barred Plaintiff's undue-influence claim and resulted in his forfeiture of trust benefits.[5] The Court of Appeals agreed, reversed the trial court's judgment, and remanded the case. See *Giller*, 359 Ga. App. At 867.

The Court of Appeals first noted that Defendants did not challenge the jury's finding of undue influence. It nonetheless determined that, despite Defendants' "undisputed role in unduly influencing their father to secure the trust containing the in terrorem clause," the court was "constrained to conclude that [Plaintiff's] 'initiation of legal proceedings triggered the (trust's) in terrorem clause.'" Id. at 871 (quoting *Norman v. Gober*, 292 Ga. 351,

---

[5] In addition, Defendants argued that the trial court erred by imposing a constructive trust and by awarding pre-judgment interest and funds that Plaintiff had already received. See *Giller*, 359 Ga. App. at 874-877.

8

354 (737 SE2d 309) (2013)). The Court of Appeals determined that although Plaintiff attempted to distinguish *Duncan*, that case was "directly on point" and led to the "inescapable conclusion" that the in terrorem clause in this case "bar[red] any claim attacking the trust, including a claim that the trust was executed as the result of undue influence." *Giller*, 359 Ga. App. at 871.

In so doing, the Court of Appeals repeated *Duncan*'s conclusions that in terrorem clauses "'are allowed under Georgia law with only one codified limitation, that being [OCGA § 53-12-22 (b)]'"; that there is no statutory good-faith or probable-cause exception to the enforcement of in terrorem clauses in Georgia; and that, because it is the legislature's role to determine public policy, the court would not judicially create such an exception. See *Giller*, 359 Ga. App. at 871 (quoting *Duncan*, 345 Ga. App. at 348). Construing the issue of undue influence as Plaintiff seeking a "public policy" exception to the enforcement of an in terrorem clause, the court stated that "it is poor public policy to permit individuals exerting undue influence over the creation of trusts to immunize their actions by including in

9

terrorem clauses in the trusts," but reiterated that it is the role of the legislature, not the courts, to "'decide public policy, and to implement that policy by enacting laws.'" Id. at 872 (quoting *Duncan*, 345 Ga. App. at 350).

The Court of Appeals then pointed out that the statute addressing in terrorem clauses in wills expressly contains a public-policy exception, see OCGA § 53-4-68 (a) ("Conditions in a will that are impossible, illegal, or against public policy shall be void."), while the statute addressing in terrorem clauses in trusts contains no such exception, see OCGA § 53-12-22 (a) ("A trust may be created for any lawful purpose."). See *Giller*, 359 Ga. App. at 872-873. Noting that after *Duncan* was decided, the General Assembly amended OCGA §§ 53-4-68 and 53-12-22 to add a new subsection to each statute that provides three nearly identical circumstances in which in terrorem clauses are not enforceable in wills or trusts, the Court of Appeals emphasized that the General Assembly did not amend OCGA § 53-12-22 (on trusts) to include a public-policy exception like the one in

10

OCGA § 53-4-68 (a) (on wills).  See *Giller*, 359 Ga. App. at 872-873.[6]

The Court of Appeals then held that the trial court erred by failing

to conclude that the in terrorem clause resulted in Plaintiff's

---

[6] From the time it was enacted in 2010 until an amendment became effective in January 2021, OCGA § 53-12-22 said:

> (a) A trust may be created for any lawful purpose.
>
> (b) A condition in terrorem shall be void unless there is a direction in the trust instrument as to the disposition of the property if the condition in terrorem is violated, in which event the direction in the trust instrument shall be carried out.

From the time it was enacted in 1996 until an amendment became effective in January 2021, OCGA § 53-4-68 said:

> (a) Conditions in a will that are impossible, illegal, or against public policy shall be void.
>
> (b) A condition in terrorem shall be void unless there is a direction in the will as to the disposition of the property if the condition in terrorem is violated, in which event the direction in the will shall be carried out.

As mentioned above, in January 2021, amendments to OCGA §§ 53-12-22 and 53-4-68 went into effect, which added at the end of subsection (b) of each statute the phrase "except as otherwise provided in subsection (c) of this Code section."  A new subsection (c) was also added to each statute.  Those subsections, which contain substantially similar language, provide that an in terrorem clause "shall not be enforceable" against a person for: (1) bringing an action for interpretation or enforcement of a trust instrument or will; (2) bringing an action for an accounting, for removal, or for other relief against a trustee or personal representative; or (3) entering into a settlement agreement.  See also OCGA §§ 53-5-25 (amended effective January 2021 to say that entering into a settlement agreement under this Code section shall not violate an in terrorem clause); 53-5-27 (same); 53-12-9 (same); 53-12-61 (amended effective January 2021 to say that petitioning for or consenting to a modification or termination of a trust under this Code section shall not violate an in terrorem clause).  Because the former versions of OCGA §§ 53-12-22 and 53-4-68 were in effect when David executed the trust instrument in 2014, the amended versions of the statutes are not at issue here.

11

forfeiture of benefits under David's trust. See id. at 873.

The Court of Appeals also determined that the trial court "further erred in permitting the undue influence claim . . . to proceed to the jury." Id. Stating that this Court and the Court of Appeals have concluded in cases involving similar in terrorem clauses that the "mere 'initiation' of legal proceedings triggers [a] trust's in terrorem clause," the Court of Appeals said that "an in terrorem clause bars an individual from proceeding with an action—even one claiming undue influence." Id. (citing, among other cases, *Norman*, 292 Ga. at 354, *Norton v. Norton*, 293 Ga. 177, 179 (744 SE2d 790) (2013), and *Duncan*, 345 Ga. App. at 345). Accordingly, the court held that the in terrorem clause altogether barred Plaintiff from pursuing his undue-influence claim and that the trial court "erred in permitting the issue to go to the jury and accepting the jury's verdict on that claim." *Giller*, 359 Ga. App. at 873.[7]

---

[7] The Court of Appeals also held that the trial court erred by imposing a constructive trust, reversed the court's judgment in that respect, and remanded the case for further proceedings. See *Giller*, 359 Ga. App. at 877. The Court of Appeals did not address Defendants' claims that the trial court

12

Then-Chief Judge McFadden dissented, arguing that "[u]nder fundamental and settled law," the jury's conclusion that the trust was the product of undue influence meant that the trust instrument, including the in terrorem clause, was void "at its inception." Id. at 877. Asserting that *Duncan* did not require a different result, the dissent noted that the court in that case did not address whether the beneficiaries had triggered the in terrorem clause, because the sole argument in the *Duncan* beneficiaries' declaratory judgment lawsuit was that the court should judicially recognize a good-faith or probable-cause exception to the enforcement of in terrorem clauses. See *Giller*, 359 Ga. App. at 879.

We granted Plaintiff's petition for certiorari to address whether the Court of Appeals correctly concluded that the in terrorem clause in this case barred Plaintiff's undue-influence claim and resulted in his forfeiture of benefits conferred by his father, David's, trust. As

---

erred by awarding pre-judgment interest and funds that Plaintiff had already received, saying that the trial court should consider those claims on remand if the court determined that the imposition of a constructive trust was still proper. See id. Plaintiff did not seek, and we did not grant, certiorari to address these issues, so we will not discuss them further.

explained below, we reverse the court's holding on that point.

2. *Legal Background*

We begin by setting forth the statutory and common-law rules applicable to our analysis. Specifically, we address the two subsections in the Georgia Code that expressly set forth a single requirement for the validity of an in terrorem clause; the common-law rules with respect to challenges to the valid formation of legal instruments; and the traditional, common-law principles regarding the effect of an in terrorem clause on such challenges.

(a) *Georgia Statutory Law*

Georgia law allows a testator or settlor to "guard a will or trust against attack" by including an in terrorem clause, which ordinarily provides that in the event a beneficiary challenges the will or trust, he will be disinherited. Mary F. Radford, Georgia Trusts and Trustees § 2:1 (Nov. 2021 update) ("Radford"). See also, e.g., *Taylor v. Rapp*, 217 Ga. 654, 656 (124 SE2d 271) (1962) (explaining that in

terrorem clauses are generally enforceable in this state).[8]  This principle, though well established, has not been expressly codified in Georgia law.  Indeed, only two provisions in the version of the Georgia Code that was in effect when David created the trust— OCGA § 53-12-22 (b) in the Trust Code and OCGA § 53-4-68 (b) in the Probate Code—even mentioned in terrorem clauses. Specifically, former OCGA § 53-12-22 (b), which applies to the trust in this case, said:

> A condition in terrorem shall be void unless there is a direction in the trust instrument as to the disposition of the property if the condition in terrorem is violated, in which event the direction in the trust instrument shall be carried out.[9]

Even though former OCGA § 53-12-22 (b) established this single statutory requirement—direction in the trust instrument for disposition of the forfeited property—that would void an in terrorem

---

[8] At least one state (Florida) statutorily prohibits in terrorem clauses in their entirety, see Fla. Stat. Ann. § 732.517, but the majority of states, like Georgia, generally permit a settlor or testator to include an in terrorem clause in his trust or will.  See Radford, supra, at § 2:1 & n.24; Gus G. Tamborello, In Terrorem Clauses: Are They Still Terrifying?, 10 Est. Plan. & Community Prop. L.J. 63, 98-100 (2017) ("Tamborello").

[9] Former OCGA § 53-12-22 is set forth in footnote 6 above.

15

clause if not satisfied, neither that provision nor any other provision contained in the former (or current) Georgia Code indicates that an in terrorem clause is automatically valid and enforceable if that single condition is satisfied. For a broader view of how in terrorem clauses operate within trust instruments, we now turn to the long-standing legal principles about trusts that form the backdrop against which former OCGA § 53-12-22 (b) was enacted.

(b) *The Common-Law Rule Generally Allows Challenges to a Legal Instrument on the Ground That the Instrument Is Not Valid*

As we have explained, when an in terrorem clause that is valid under Georgia statutory law is included in a trust instrument, the clause ordinarily will disinherit a beneficiary who challenges the trust. But as we discuss in detail below, a predicate for the in terrorem clause's operation is the valid formation of the legal instrument in which the clause is embedded.

On this latter point, Georgia courts have long applied the common-law rule that the valid formation of a trust instrument, will, or contract may be challenged. Such challenges include, for example, lack of capacity, duress, fraud, and undue influence—the

16

claim at issue here. See Eunice L. Ross & Thomas J. Reed, Will Contests §§ 2:4 & 2:8 (2d ed., June 2022 update) ("Ross & Reed") (explaining that as early as 1590, English common law recognized that the formation of a will could be challenged on the basis of lack of capacity, duress, fraud, or undue influence and noting that this rule was carried forward by "Blackstone to become part of the general legal background of the American colonies") (footnote omitted); Grace M. Giesel, A Realistic Proposal for the Contract Duress Doctrine, 107 W. Va. L. Rev. 443, 452-453 & n.46 (2005) (noting that as early as 1732, English common law recognized that a contract was voidable on the basis that it was unlawfully formed through duress). See also OCGA § 1-1-10 (c) (1) (establishing that the common laws of England as they existed on May 14, 1776 remain in full force and effect, "until otherwise repealed, amended, superseded, or declared invalid or unconstitutional"); *Whitt v. Blount*, 124 Ga. 671, 671 (53 SE 205) (1906) (explaining that duress may void a contract); *Terry v. Buffington*, 11 Ga. 337, 343-345 (1852) (explaining that lack of capacity, fraud, or undue influence may

17

invalidate a will).

Undue influence "'amount[s] to deception or force and coercion . . . so that [a person] is deprived of free agency and the will of another is substituted for [his].'" *Lewis v. Van Anda*, 282 Ga. 763, 766 (653 SE2d 708) (2007) (citation omitted). It is well established that when the whole of a trust instrument, will, or contract is determined to be the product of undue influence, it is invalid; the document—including all of its provisions—is void. See Ross & Reed, supra, at §§ 2:4 & 9:10 (noting that as early as 1590, Swinburne recognized that undue influence may invalidate a will and explaining that the doctrine may also invalidate a trust or contract). See also, e.g., *Lewis*, 282 Ga. at 767 (upholding the jury's finding that a trust was procured by undue influence and thus void); *Tidwell v. Critz*, 248 Ga. 201, 206-207 (282 SE2d 104) (1981) (explaining that a contract procured by undue influence is ordinarily voidable); *Terry*, 11 Ga. at 343 (noting that undue influence destroys the validity of a will); *Mullis v. Welch*, 346 Ga. App. 795, 799 (815 SE2d 282) (2018) (explaining that a finding of undue influence invalidates a trust and

noting that "this is the same standard required for the invalidation of a will or a deed as the result of undue influence").[10]  In other words, a finding that an entire trust, will, or contract was procured by undue influence nullifies each and every provision in that document, regardless of the type of provision.  See Ross & Reed, supra, at § 9:10; Alan R. Gilbert, Partial Invalidity of Will: May Parts of Will be Upheld Notwithstanding Failure of Other Parts for Lack of Testamentary Mental Capacity or Undue Influence, 64 ALR3d 261 § 2[a] (1975, updated weekly) ("Gilbert") (explaining that "[o]bviously, if the entire will is the product of undue influence, it is entirely invalid").  Cf. *City Dodge, Inc. v. Gardner*, 232 Ga. 766, 767,

---

[10] A trust, will, or contract that has been procured by undue influence is generally "voidable" until a beneficiary of a trust or will, or a party to a contract, challenges the legal document on that ground and a determination of undue influence is made, thus rendering the document "void."  When no such challenge has been raised, a document created through undue influence is not automatically void.  See, e.g., Robin C. Larner, 7 Georgia Jurisprudence, Business and Commercial Law: Contracts § 1:11 (May 2022 update) (explaining that a "voidable contract may be ratified expressly or by implication by the affected party" while a "void contract is no contract at all in that it binds no one and is merely a nullity"); Daniel F. Hinkel, Pindar's Georgia Real Estate Law and Procedure with Forms, § 19:16 (7th ed., Apr. 2022 update) (explaining that "[t]he term 'voidable' connotes continuance in force until repudiated").

769-770 (208 SE2d 794) (1974) (rejecting a seller's argument that a clause in a contract saying that "no other agreement, promise or understanding of any kind pertaining to this purchase will be recognized" prevented the buyer from claiming that he relied on a fraudulent misrepresentation made by the seller, because the jury had concluded that the contract as a whole was invalid due to the fraud, which rendered the clause "ineffectual").[11]

The General Assembly enacted the Trust Code against the backdrop of this bedrock principle. Indeed, the Trust Code says, "Except to the extent that the principles of common law and equity governing trusts are modified by this chapter or another provision of law, those principles remain the law of this state." OCGA § 53-12-3. Nothing in the applicable version of the Trust Code, or

---

[11] In this case, Plaintiff claimed, and the jury found, that the entire trust instrument was procured by undue influence, thus invalidating the whole document. Thus, we need not consider the effect of a finding that only part of such a document was the product of undue influence. See Gilbert, supra, at § 2[a] (explaining that "if the entire will is the product of undue influence, it is entirely invalid," but noting that a majority of courts have held that if only part of a will was procured by undue influence, other portions of the will "may nevertheless be given effect, at least if such other portions are separable from the concededly invalid ones").

elsewhere in the Georgia Code, suggests that the General Assembly intended to eliminate the common-law rule that a finding of undue influence invalidates a trust. See id. See also *Gray v. State*, 310 Ga. 259, 262 (850 SE2d 36) (2020) (explaining that "'statutes are presumed to be enacted by the legislature with full knowledge of the existing condition of the law and with reference to it'" and that "'common-law rules are still of force and effect . . . except where they have been changed by express statutory enactment or by necessary implication'") (citations omitted).[12]

---

[12] It is true that, although the General Assembly has codified the undue-influence rule in the Probate Code, see OCGA § 53-4-12 ("A will is not valid if anything destroys the testator's freedom of volition, such as . . . undue influence whereby the will of another is substituted for the wishes of the testator."), the General Assembly has not expressly codified a similar rule in the Trust Code. Nevertheless, absent evidence to the contrary, we do not presume this proves that the legislature intended to reject the bedrock undue-influence rule explained above with respect to trusts.

> Instead, we presume the opposite—that the legislature knew about the common-law rule, wanted to keep the rule, and understood that it would be unnecessary to write the rule into the statute when courts have incorporated the common-law rule into the statute for decades.

*Gray*, 310 Ga. at 265. Notably, the General Assembly also has not codified the common-law rule about undue influence with respect to contracts. Of course, it is well established that a contract can be voided on the basis that it was created because of undue influence. See generally Ross & Reed, supra, at § 9:10; *Tidwell*, 248 Ga. at 206-207.

(c) *The Common-Law Rule About Challenging the Formation of a Trust Instrument Containing an In Terrorem Clause and the Effect of an Unsuccessful Challenge*

We have established that the general rule in Georgia is that if an entire legal instrument such as a trust is determined to have been procured by undue influence, that legal instrument—including all of the provisions contained in it—is invalid and thus void. See, e.g., *Lewis*, 282 Ga. at 767. Under such circumstances, the in terrorem clause contained in the trust instrument—along with all other provisions of the instrument—would be invalid, and the null in terrorem clause could not effect a forfeiture.

But how can a beneficiary of a trust establish that a trust instrument containing a statutorily compliant in terrorem clause[13] is invalid? As described above, Georgia follows the common-law rule that the beneficiary of such a trust may challenge the validity (i.e., the lawful formation) of the trust instrument, with the hope of

_____

[13] There is no question that the trust here met that requirement, because undisputed record evidence shows that the trust instrument said that if the in terrorem clause were violated, the contesting beneficiary's forfeited benefits would be distributed to the remaining beneficiaries.

rendering it—and the in terrorem clause contained in it—void. Such a challenge, however, runs the concomitant risk of forfeiting all of the benefits from the trust if the legal instrument is determined to be valid (i.e., not procured by lack of capacity, duress, fraud, undue influence, or some other legal doctrine that could render a legal instrument invalid), because under such circumstances, the in terrorem clause generally would be triggered by the beneficiary's challenge. See Gerry W. Beyer et al., The Fine Art of Intimidating Disgruntled Beneficiaries with In Terrorem Clauses, 51 SMU L. Rev. 225, 236-237 (1998) ("Beyer") (discussing this principle, with respect to both trusts and wills, at English common law). See also *Anonymous*, 86 Eng. Rep. 910, 910 (1674); *Webb v. Webb*, 24 Eng. Rep. 325 (1710).

A leading treatise on Georgia trusts explains it this way:

In a sense, the in terrorem clause puts the beneficiary who is attacking the validity of a . . . trust in an "all or nothing" position: if the beneficiary wins and the . . . trust is voided, the in terrorem clause is also voided. On the other hand, if the beneficiary loses, the beneficiary forfeits all of his or her interest under the . . . trust.

Radford, supra, at § 2:1 n.17.

In sum: the valid formation of a trust instrument is a precondition to the effectiveness of any in terrorem clause contained in it. If a beneficiary claims that a trust instrument was procured by undue influence and it is determined that the entire trust instrument was, in fact, procured by undue influence, then the trust instrument and its in terrorem clause are void. But if the undue-influence claim fails—meaning that the formation of the trust instrument was valid—then any statutorily valid in terrorem clause is triggered and the beneficiary forfeits any benefits otherwise conferred upon him by the trust. This principle, which applies equally to trusts and to wills, see Radford, supra, at § 2:1 n.17, makes perfect sense. A person cannot improperly compel the creation of a legal document by force, fraud, or undue influence and immunize his or her ill-gotten gains from challenge by including an in terrorem clause in the document.[14]

---

[14] Many commentators have explained this well-established rule with respect to both trusts and wills. See, e.g., Tamborello, supra, at 65 (explaining that if a will contest successfully invalidates a will, it also invalidates the in terrorem clause in the will, but if the contest is unsuccessful and the will

Although it appears that we have not previously set forth this fundamental principle in the clear manner undertaken here, this Court routinely has applied the rule. For example, in *Simmons v. Norton*, 290 Ga. 223 (719 SE2d 421) (2011), two sisters filed a caveat challenging the validity of their father's will on the ground that it was procured by undue influence. See id. at 223-224. This Court held that the trial court properly granted summary judgment on that claim because there was "simply no evidence" to support it. Id.

stands, the beneficiary forfeits what he would have otherwise received under the instrument); Deborah S. Gordon, Forfeiting Trust, 57 Wm. & Mary L. Rev. 455, 469 (2015) (noting that a beneficiary who contests a will "will be disinherited if the will turns out to be valid and admissible" but that "if she succeeds in discrediting the will, of course, the entire document—including its forfeiture clause—will be struck down"); Lela P. Love & Stewart E. Sterk, Leaving More Than Money: Mediation Clauses in Estate Planning Documents, 65 Wash. & Lee L. Rev. 539, 564 (2008) (explaining that a successful claim that a will is invalid "would invalidate the no contest clause"); Beyer, supra, at 227 ("If the contestant successfully obstructs the probate of the testator's will or invalidates the trust, the in terrorem provision is disregarded because the entire instrument to which it is an integral part is nullified."); W. Barton Leach, Cases and Text on the Law of Wills, 111 & n.10 (1939) (explaining that if a challenge to the validity of a will is successful, the in terrorem clause "[o]bviously . . . falls with the rest of the will").

Although the Georgia General Assembly has not codified the rule that a successful challenge to the formation of a trust instrument or will invalidates any in terrorem clause contained in the instrument, nothing in the Georgia Code indicates that the General Assembly intended to eliminate this traditional rule. See *Gray*, 310 Ga. at 262. See also footnote 12, above.

25

at 224. The sisters then filed a lawsuit seeking a declaratory judgment to determine the effect of an in terrorem clause in the will; the trial court determined that the sisters had forfeited their inheritance under the clause; and we affirmed, holding that their prior caveat resulted in the forfeiture of their entire interest under the will. See *Norton*, 293 Ga. at 177-179. This conclusion aptly illustrates the traditional rule: the sisters challenged the validity of a will containing an in terrorem clause, asserting that it was procured by undue influence; they failed to establish that the formation of the will was a product of undue influence, meaning that the legal instrument (i.e., the will) was valid; the in terrorem clause was thus triggered; and the sisters' inheritance was consequently forfeited under the valid and effective clause. See id.

Another case similarly demonstrates our application of this rule. In *Norman v. Gober*, 288 Ga. 754 (707 SE2d 98) (2011) ("*Norman I*"), we affirmed the probate court's dismissal of a caveat filed by the appellant grandchild, who was a minor and a contingent residuary beneficiary under his grandmother's will, claiming that

26

the will was invalid on the grounds of undue influence and lack of capacity. See id. at 754. We concluded that the grandchild lacked standing to file the caveat, because he would have benefited from the probate of the will and because his challenge, if successful, would have destroyed his contingent interest. See id. at 755. We noted that the challenge appeared to be "undertaken to benefit [the grandchild's] mother," who had been bequeathed only a specific amount of money under the will, with the remainder of the estate to be placed in trust for the mother's sister. Id.

Following that appeal, the co-executors of the will filed a petition for declaratory judgment and served discovery requests on the mother and other beneficiaries to determine who was actually responsible for the caveat and whether an in terrorem clause in the will could prevent them from inheriting. See *Norman*, 292 Ga. at 353 (hereinafter "*Norman II*"). The mother and other beneficiaries filed a motion to dismiss the petition, which the probate court denied, and we affirmed. See id. at 353-354. We rejected the beneficiaries' argument that the grandchild's earlier challenge to

27

the will did not constitute a will contest, noting that his claims sought to invalidate the formation of the will itself. See id. at 354. We then held that the grandchild's "initiation of legal proceedings triggered the in terrorem clause and might, under circumstances which may be uncovered, be attributed to a party other than [the grandchild]." Id. Despite its peculiar circumstances, *Norman II*, like *Norton*, exemplifies the traditional rule: the grandchild challenged the validity of a will containing an in terrorem clause, asserting that it was the product of undue influence and lack of capacity; his claims failed; the will was therefore valid and the in terrorem clause was effective to potentially disinherit whichever beneficiary was actually responsible for the grandchild's filing the caveat. See *Norman II*, 292 Ga. at 354.[15]

Thus, the common-law rule regarding the effect of an in terrorem clause on a challenge to the valid formation of a legal instrument has been consistently applied by this Court. See

---

[15] As discussed in Division 3 below, the Court of Appeals's opinion in this case misread the holdings of *Norton* and *Norman II*.

28

*Norman II*, 292 Ga. at 354; *Norton*, 293 Ga. at 177-179. See also

*Caswell v. Caswell*, 285 Ga. 277, 277-279 & n.3 (675 SE2d 19) (2009)

(affirming the trial court's judgment following a jury verdict that

rejected the appellant's claims that a will was the product of undue

influence and lack of capacity, and noting that the trial court

reserved the issue of the validity of an in terrorem clause in the will

and its effect on the appellant for resolution after the trial); *Lillard*

*v. Owens*, 281 Ga. 619, 619-622 (641 SE2d 511) (2007)

(acknowledging that a will contained an in terrorem clause but

holding that the evidence was legally sufficient to sustain the jury's

verdict that the will was the product of undue influence); *Lanier v.*

*Lanier*, 218 Ga. 137, 139-146 (126 SE2d 776) (1962) (rejecting the

plaintiff's contention that a will was invalid because it violated the

rule against perpetuities and then concluding that the plaintiff had

forfeited his inheritance under an in terrorem clause contained in

the will).[16]

---

[16] These cases illustrate that a challenge to the valid formation of a trust
instrument or will is a threshold issue that courts ordinarily should resolve

3. *Analysis*

We turn now to the analysis of the circumstances presented in this case. The Court of Appeals majority opinion held, and Defendants argue, that the in terrorem clause in David's trust barred Plaintiff from asserting his undue-influence claim in the first place and resulted in his forfeiture of trust assets. But that conclusion is incorrect, because as we explained above, it is well established under Georgia law that an in terrorem clause does not bar a challenge to the valid formation of a legal instrument such as a trust or will. Nor does such a clause result in forfeiture when a

---

before determining whether the challenge causes a forfeiture under an in terrorem clause contained in the instrument. We note that these cases involved challenges to the validity of a will, rather than a trust. Although we have found no Georgia cases before this one addressing the effect of an in terrorem clause on a challenge to the formation of a trust instrument, our appellate courts have regularly relied on cases involving in terrorem clauses in wills when analyzing the effect of an in terrorem clause on a trust. See, e.g., *Snook v. Sessoms*, 256 Ga. 482, 482 (350 SE2d 237) (1986); *Callaway v. Willard*, 321 Ga. App. 349, 353 (739 SE2d 533) (2013). See also *Johnston v. Goss*, Case No. 95-6295, 1997 WL 22530, at *10 (10th Cir. Jan. 22, 1997) (vacating the trial court's grant of summary judgment on the plaintiff's claim that a trust was procured by undue influence because there were triable issues, and declining to address the question of the application of the in terrorem clause in the trust because "the validity or invalidity of the [t]rust has not been conclusively determined").

beneficiary successfully voids a trust or will.

Here, Plaintiff raised an undue-influence claim to challenge the validity of the trust instrument—which included the in terrorem clause contained in it. The trial court properly permitted Plaintiff's undue-influence claim to proceed to the jury, and when the jury determined that the trust was procured by undue influence, the trust and its in terrorem clause were rendered void and without effect. Because Plaintiff's undue-influence claim was successful, the void in terrorem clause did not result in his forfeiture of benefits from the trust.[17]

The Court of Appeals majority's conclusion to the contrary misunderstood the background law and our case law interpreting it,

---

[17] Of course, had the jury concluded that Plaintiff did *not* prove that the trust had been procured by undue influence, then the trust instrument would have remained valid; the in terrorem clause would have applied; and Plaintiff would have forfeited all benefits conferred by the trust, as opposed to inheriting $25,000 under an unchallenged trust instrument or the larger sum he inherited after the trust instrument was found to be void.

Notably, in its prior opinion in this case, it appears that the Court of Appeals properly allowed the undue-influence claim to proceed to the jury. See *Slosberg*, 341 Ga. App. at 582-583 (holding that there was some evidence to support Plaintiff's undue-influence claim and reversing the grant of summary judgment to Defendants on the basis that the trust was valid and that Plaintiff had forfeited his benefits under the in terrorem clause).

and Defendants repeat those misconceptions in their brief to this Court. First, the majority opinion implied that an in terrorem clause is automatically valid, regardless of the validity of the trust instrument or will in which the clause is contained, if the clause satisfies former OCGA § 53-12-22 (b), which renders an in terrorem clause invalid if the trust instrument does not contain a direction as to the disposition of the forfeited property in the event the clause is violated. See *Giller*, 359 Ga. App. at 870-871. As we discussed above, however, former OCGA § 53-12-22 (b) provides the only *codified* requirement for the validity of an in terrorem clause in a trust instrument, but our common law supplies additional rules that can invalidate an in terrorem clause if a beneficiary successfully challenges the formation of the trust instrument that encompasses the clause. Nothing in former or current OCGA § 53-12-22 (or the rest of the Trust Code) overrides those common-law rules. See OCGA § 53-12-3; *Gray*, 310 Ga. at 262.

Second, the Court of Appeals majority wrongly interpreted the issue of undue influence by treating it as a matter of public policy

instead of as a legal doctrine. That misstep led the court to rely incorrectly on *Duncan* and the language in OCGA § 53-4-68 (a), which says, "Conditions in a will that are impossible, illegal, or against public policy shall be void." But the principle that the provisions in a legal instrument such as a trust, will, or contract must be valid to be effective is not merely an issue of "public policy"; it is a well-established common-law rule that our courts have followed for more than a century. See, e.g., *Whitt*, 124 Ga. at 671; *Terry*, 11 Ga. at 343-345. See also *Innovative Images, LLC v. Summerville*, 309 Ga. 675, 681 (848 SE2d 75) (2020) (explaining that "a contract is void as against public policy not because the *process* of entering the contract was improper and objectionable by one party or the other, but rather because the *resulting agreement* itself is illegal and normally unenforceable by either party") (emphasis in original).

The Court of Appeals majority's flawed "public policy" analysis precipitated its incorrect determination that *Duncan* was "directly on point," and that led to its "inescapable" (but erroneous) conclusion

33

that an in terrorem clause "bars any claim attacking [a] trust, including a claim that the trust was executed as the result of undue influence." *Giller*, 359 Ga. App. at 871. What is more, the circumstances of *Duncan* are distinguishable. In that case, the trustees sought a declaratory judgment that the decedent's trust, which contained an in terrorem clause, was valid, and the beneficiaries filed a counterclaim seeking a declaratory judgment that the in terrorem clause was not enforceable "to the extent it preclude[d] them from asserting . . . a claim of undue influence," even though the beneficiaries alleged that they had a good-faith basis and probable cause to assert such a claim. *Duncan*, 345 Ga. App. at 346-347. The trustees filed a motion for summary judgment on the counterclaim, which the trial court granted, declining the beneficiaries' invitation to judicially create a good-faith or probable-cause exception to the enforcement of in terrorem clauses. See id. at 347.

On appeal, the beneficiaries contended only that such an exception should be recognized under Georgia law, as it is recognized

34

under the statutory or decisional law of other states. See id. The Court of Appeals rejected that argument and affirmed the trial court. It held that there is no statutory good-faith or probable-cause exception to the enforcement of in terrorem clauses and that there is no public-policy exception in the Trust Code, and it declined to adopt such an exception. See id. at 350 (noting that the "'legislature, and not the courts, is empowered by the Constitution to decide public policy, and to implement that policy by enacting laws'") (citation omitted).

In other words, in *Duncan*, the beneficiaries preemptively sought a declaration that the in terrorem clause was unenforceable "to the extent it preclude[d] them" from asserting an undue-influence claim. And they contended that their challenge would not result in the forfeiture of their benefits, given that they had a good-faith basis and probable cause to bring the claim. The beneficiaries essentially sought to secure a ruling that, as a matter of law, the in terrorem clause contained in the trust was unenforceable because the clause itself prevented the beneficiaries from bringing an undue-

influence claim. They thus sought to indirectly challenge the trust without bearing the concomitant risk of forfeiting all of their benefits if the trust instrument was later determined to be valid. See, e.g., Radford, supra, at § 2:1 n.17; Beyer, supra, at 227. The Court of Appeals held that they could not do so, and declined to usurp the legislative branch's authority to establish public policy by judicially creating a non-statutory good-faith or probable-cause exception to the enforcement of in terrorem clauses in trust instruments. See *Duncan*, 345 Ga. App. at 350.

As the trial court in this case recognized, *Duncan* answered only a narrow question: whether to judicially create a good-faith or probable-cause exception to the enforcement of an in terrorem clause that would permit a beneficiary to challenge the validity of a trust without risking forfeiture. But that question is not pertinent in this case because Plaintiff, unlike the beneficiaries in *Duncan*, actually asserted *and won* his undue-influence claim, thus rendering the trust instrument and in terrorem clause void under Georgia law; he therefore need not (and does not) rely on a good-faith or probable-

36

cause exception to prevail. *Duncan*'s holding is inapposite here, and the Court of Appeals was wrong to rely on it.[18]

---

[18] We note that, in determining that Georgia law does not recognize a good-faith or probable-cause exception, *Duncan* did not grapple with the question of whether the common law of England as it existed in 1776, and which the General Assembly adopted as Georgia law, recognized such an exception. See OCGA §§ 53-12-3; 1-1-10 (c) (1). See also *Powell v. Morgan*, 23 Eng. Rep. 668, 668 (Ch. 1688) (holding that the plaintiff did not forfeit his legacy by contesting the formation of a will because he had probable cause to assert the challenge). Nor did the Court of Appeals analyze whether any such common-law exception has been expressly or implicitly displaced by Georgia's statutory law. See *Glenn v. State*, 310 Ga. 11, 17-24 (849 SE2d 409) (2020) (applying this sort of analysis). But we need not answer those questions to decide this case, and we express no opinion as to whether *Duncan* was correctly decided in this regard.

In addition, we note that some language in *Duncan* appears to conflict with the ultimate holding of the case. For example, in the introductory paragraph of the opinion, the Court of Appeals said broadly that the beneficiaries "challenged the legal validity of the trust based on a claim of undue influence" and that "the trial court did not err by enforcing the in terrorem clause against a claim of undue influence and therefore granting partial summary judgment to the trustees on that claim." 345 Ga. App. at 345. See also id. at 347 (stating that the beneficiaries "sought a declaration that the in terrorem provision . . . is unenforceable to the extent it precludes them from asserting . . . a claim of undue influence"). But the opinion goes on to make clear that the beneficiaries filed a counterclaim seeking a declaratory judgment regarding the future enforcement of the in terrorem clause as to a potential claim of undue influence made in good faith and with probable cause, and that the trial court granted summary judgment against the beneficiaries as to the declaratory judgment claim. See id. at 346-347. To the extent *Duncan* incorrectly suggests that an in terrorem clause bars a claim challenging the validity of a trust or will, that language is disapproved.

We also note that after the Court of Appeals's decision in *Duncan*, the trial court held that the in terrorem clause in the trust in that case also applied to the beneficiaries' claim for tortious interference with the expectation of a bequest. The Court of Appeals affirmed that ruling, stating that it had held in

37

Moreover, the Court of Appeals majority incorrectly looked to OCGA § 53-4-68 (a)'s reference to "public policy" with respect to wills in evaluating whether an in terrorem clause in a trust instrument "bars" a claim of undue influence. The majority reasoned that after the decision in *Duncan*, the General Assembly amended subsections (b) and (c) of OCGA §§ 53-12-22 and 53-4-68, as discussed in footnote 6 above, but did not amend OCGA § 53-12-22 (a), which says that "[a] trust may be created for any lawful purpose," to mirror OCGA § 53-4-68 (a), which prohibits "[c]onditions in a will that are . . . against public policy." See *Giller*, 359 Ga. App. at 872-873. But as discussed above, the validity of a will or trust is not a public-policy issue, and *Duncan*'s holding about judicially creating exceptions to valid in terrorem clauses has no bearing here.[19] Thus, even if we

the previous appeal that the in terrorem clause was "enforceable as to [the beneficiaries'] undue-influence claim" and concluding that the tortious-interference claim similarly alleged that the trust was procured by undue influence. *Duncan v. Rawls*, 359 Ga. App. 715, 718-721 (859 SE2d 857) (2021). The beneficiaries filed a petition for certiorari, which is currently pending in this Court, arguing that this holding was incorrect. See *Duncan v. Rawls*, Case No. S21C1202.

[19] Likewise, neither OCGA §§ 53-12-22 (c) nor 53-4-68 (c) speaks to the validity of an in terrorem clause. Rather, those subsections list circumstances in which a valid in terrorem clause "shall not be enforceable."

assume (dubiously) that the General Assembly's omission of the language prohibiting conditions that violate public policy in the Trust Code signifies a rejection of that rule regarding trusts, OCGA § 53-4-68 (a)'s reference to public policy does not speak to whether a will—let alone a trust—was validly formed. A comparison of OCGA §§ 53-12-22 and 53-4-68 therefore provides no indication that the legislature intended for an in terrorem clause to bar an undue-influence claim with respect to trusts but to allow such claims with respect to wills.

Finally, the Court of Appeals majority concluded that *Norton* and *Norman II* held that a beneficiary is barred from raising an undue-influence claim against a trust instrument that contains an in terrorem clause. See *Giller*, 359 Ga. App. at 873. But as we explained above in Division 2 (c), those cases did not hold that the in terrorem clauses at issue barred the beneficiaries from asserting undue-influence claims. Rather, the in terrorem clauses in those cases resulted in forfeiture because the beneficiaries had already *raised* their undue-influence claims and *lost*—they were not

39

successful in asserting that the legal instrument was procured by undue influence. See *Norton*, 293 Ga. at 177-179; *Norman II*, 292 Ga. at 354. To the extent that certain language in *Norton* and *Norman II* suggests otherwise—i.e., that an in terrorem clause bars a challenge to the formation of a trust or will or that the filing of such a challenge automatically results in forfeiture—that language is disapproved. See *Norman II*, 292 Ga. at 354 (emphasizing that "Decedent's in terrorem clause becomes operative '(s)hould any beneficiary contest *or initiate legal proceedings* to contest the validity of this Will'" and saying that the appellant's "initiation of legal proceedings triggered the in terrorem clause") (emphasis in original); *Norton*, 293 Ga. at 178 (stating that "[a] challenge to the will's probate by one named as a taker under the will results in the forfeiture of the 'entire interest' that taker would otherwise have under the will" and that "[t]he clear intent [of the will] is that the interest of any contesting beneficiary be forfeited").[20]

---

[20] In reaching its conclusion in this case, the Court of Appeals majority also relied on *In re Estate of Johnson*, 352 Ga. App. 164 (834 SE2d 283) (2019),

40

For these reasons, the Court of Appeals erred by concluding

that the in terrorem clause in this case barred Plaintiff's undue-

_____

and *Howell v. Bates*, 350 Ga. App. 708 (830 SE2d 250) (2019). However, *Johnson* did not involve a challenge to the formation of a trust or will. Instead, the beneficiaries in that case conceded that their father's trust was valid but sought to remove his fiancée as executor of the will, as a trustee, and as a beneficiary on the basis that the will and trust instrument referred to her as the father's "wife," even though they were not married. See *Johnson*, 352 Ga. App. at 165-167. The Court of Appeals held that any such claims would be barred by the will's and trust's in terrorem clauses, because the beneficiaries sought to "break the father's will and trust" by "void[ing] any bequest to [the fiancée] or any involvement by [the fiancée] in the father's estate." Id. at 167-168. And in *Howell*, the decedent executed a will that contained a pour-over provision that bequeathed all of her assets to a trust upon her death. See 350 Ga. App. at 708. Both the will and the trust instrument contained similar in terrorem clauses, which said that if a beneficiary contested either the trust or the will, any benefits under the trust and will would be revoked. See id. at 709. A beneficiary challenged the validity of the will in probate court on the basis of undue influence, and while that action was pending, an executor of the will— who was also a trustee—filed a petition for declaratory judgment in superior court seeking a ruling that the trust was valid. See id. at 710. The beneficiary then filed an answer asserting that the trust was invalid. See id. The superior court granted the trustee's motion for summary judgment, and the Court of Appeals affirmed, ruling, in pertinent part, that the beneficiary's challenge to the validity of the trust was time-barred, and that the trust thus "remained valid and in full force and effect." Id. at 711, 714. The court then concluded that the beneficiary had violated the in terrorem clause in the trust and thus forfeited her right to a distribution from the trust, because she had challenged the validity of the will. See id. at 714-715. *Howell* presented the complicated question of whether a valid in terrorem clause in a valid trust results in a forfeiture when a beneficiary challenges the validity of a will containing a pour-over provision and the challenge to the formation of the will had not been decided. In this case, the trust instrument and in terrorem clause were determined to be invalid. *Howell* is thus distinguishable, and we express no opinion as to whether it reached the correct result.

41

influence claim and resulted in the forfeiture of any benefits from his father's trust. We therefore reverse that part of the Court of Appeals's judgment. Because the court also determined that the trial court erred by imposing a constructive trust and remanded the case for a determination of whether a constructive trust was proper, see footnote 7 above, we remand the case to the Court of Appeals with the direction to remand the case to the trial court for further proceedings consistent with this opinion.[21]

*Judgment reversed in part, and case remanded with direction. All the Justices concur.*

---

[21] We express no opinion as to whether the constructive trust was properly imposed.

BETHEL, Justice, concurring.

I was wrong. At least I'm fairly sure I was.

In *Duncan v. Rawls*, 345 Ga. App. 345, 347-350 (1) (812 SE2d 647) (2018), a majority of the Court of Appeals held that the trial court was correct in granting summary judgment on the counterclaim asserted by the purported beneficiaries of a trust. My frustration with that ruling led me to call for the judicial recognition of a good faith and probable cause exception for those challenging in terrorem clauses in trust documents.[22] See id. at 354-359 (Bethel, J., dissenting). Of course, as the Court clearly demonstrates today, such an exception is not necessary to allow a challenge to the formation of a trust. Thus, I happily concur in the Court's articulation of the

---

[22] As noted in the opinion of the Court in footnote 18, it is possible that a good faith and probable cause exception existed in the common law of England in 1776 when it was adopted as the law of Georgia. See *Powell v. Morgan*, 23 Eng. Rep. 668 (Ch. 1688) (holding that the plaintiff did not forfeit his legacy by contesting the formation of a will because he had probable cause to assert the challenge). Of course, that question is not before us here and was most definitively not before the Court of Appeals in *Duncan*, where the beneficiaries asked the court to *adopt* such an exception rather than enforce an already-existing exception. Thus, if my suggestion in *Duncan* to recognize the exception later proves to have been correct based on its existence in the adopted common law of 1776, it will be a product of pure accident.

correct rule.

Given the circumstances of that case, the holding in *Duncan* did not allow the opportunity to challenge the formation of the trust in question there. Because of that, I write to emphasize the Court's disapproval of *Duncan* to the extent that decision endorsed the summary adjudication of a challenge to formation based solely on the presence of an in terrorem clause when the Court of Appeals concluded that "the trial court did not err by *enforcing* the in terrorem clause *against a claim of undue influence* and therefore granting partial summary judgment to the trustees on that claim." (Emphasis supplied.) Id. at 345. Summary adjudication of a challenge to the formation of any legal document based *solely on the presence* of an in terrorem clause in the document is improper. That was the main thrust of my dissent in *Duncan*, and it is, in my view, the main takeaway of the Court's opinion in this case.

Decided June 30, 2022.

Certiorari to the Court of Appeals of Georgia — 359 Ga. App. 867.

*Sugarman Law, F. Skip Sugarman, Matthew G. Hawk*, for appellant.

*Smith Gambrell & Russell, Leah Ward Sears, Sasha N. Greenberg; Raiford & Dixon, Tyler C. Dixon*, for appellees.

*Djuric Spratt, Nikola R. Djuric; Hodges McEachern & King, T. Kyle King*, amici curiae.